## UNITED STATES FEDERAL COURT
## FOR
## THE DISTRICT OF MASSACHUSETTS

**Civil Complaint No**.

**James W. Cauger,**
**George Bergman,**
**Ismenia Bernardo**
**Linda Bozek,**
**Mary M. Campbell,**
**John D. Cotter,**
**Irma Dratwinski,**
**Peter Gagnon,**
**Joseph Grenier,**
**Charles Latimer Jr.,**
**Ely O Marques,**
**Barbara Menard,**
**Maria Moura,**
**Maria Pedro,**
**Charmayne Phillips,**
**Lillian Rickets,**
**Ernest Sickinger,**
**George Simonin,**
**Donald Skinner,**
**Irene Smith,**
**Brett Torngren,**
**Frank Torngren,**
**Colleen A. Zarembovicz,**
**Estate of Charles W. Balser,**
**Estate of Audrey Chase,**
**Estate of Juliano DiRenzo,**
**Estate of Michael P. DiIorio,**
**Estate of Carl F. Ellery,**
**Estate of Maria Fonseca,**
**Estate of Richard H. Gaboury,**
**Estate of Eugene F. Garneau,**
**Estate of Evans Gilmore,**
**Estate of Lyford W. Gorman,**
**Estate of Theodore Guimond,**
**Estate of David Hoyle,**
**Estate of Blanche Leary,**
**Estate of Elizabeth A. McCretton,**
**Estate of Irene Moitoza,**
**Estate of Antonio Resendes**

**Estate of Edward Lewis Schulze,**
**Estate of Rose Sheldon,**
**Estate of Rose Silvia,**
**Estate of Louraine E. Sullivan,**
**Estate of Pierrette M. Sullivan,**
**Estate of Elmer Thornhill,**
**Estate of Barbara M. Turgeon, and**
**Estate of Anna M. Vallet**
**Estate of Susan Neveu**

    **PLAINTIFFS**

**VS.**

**Texas Instruments, Inc.**

and

**John Doe,**

    **DEFENDANTS**

# 1st Amended COMPLAINT

**Now come the Plaintiffs, James W. Cauger, George Bergman, Ismenia Bernardo, Linda Bozek, Mary M. Campbell, John D. Cotter, Irma Dratwinski, Peter Gagnon, Joseph Grenier, Charles Latimer Jr., Ely O Marques, Barbara Menard, Maria Moura, Maria Pedro, Charmayne Phillips, Lillian Rickets, Ernest Sickinger, George Simonin, Donald Skinner, Irene Smith, Brett Torngren, Frank Torngren, Colleen A. Zarembovicz, Estate of Charles W. Balser, Estate of Audrey Chase, Estate of Juliano DiRenzo, Estate of Michael P. DiIorio, Estate of Carl F. Ellery, Estate of Maria Fonseca, Estate of Richard H. Gaboury, Estate of Eugene F. Garneau, Estate of Evans Gilmore, Estate of Lyford W. Gorman, Estate of Theodore Guimond, Estate of David Hoyle, Estate of Blanche Leary, Estate of Elizabeth A. McCretton, Estate of Irene Moitoza, Estate of Antonio Resendes, Estate of Edward Lewis Schulze, Estate of Rose Sheldon, Estate of Rose Silvia, Estate of Louraine E. Sullivan, Estate of Pierrette M. Sullivan, Estate of Elmer Thornhill, Estate of Barbara M. Turgeon, Estate of Anna M. Vallet, and Estate of Susan Neveu and allege as follows:**

## PLAINTIFFS

**PLAINTIFF ONE– CAUGER**

1.    The Plaintiff, James W. Cauger, currently resides at 37 Frog Pond Close, Mashpee, MA 02649.

2.    James Cauger was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1957- 1959, and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

3.    As a direct and proximate result of the Defendant's conduct, James Cauger developed cancer of the pharynx, squamous cell carcinoma (SCC) of the tongue, left cheek, glossotonisillar sulcus, left retro molar trigon and left hard palate was diagnosed on or about June 28, 2013. James Cauger has also developed Peripheral Neuropathy in the legs and feet that were medically determined to not be the result of diabetes.

4.    James Cauger suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF TWO – BERGMAN**

5.    The Plaintiff, George Bergman, currently resides at 956 South Main Street Attleboro, MA 02703.

6.   George Bergman was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from July 1977 to May 2001 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

7.   As a direct and proximate result of the Defendant's conduct, George Bergman, developed basal cell carcinoma on the chest and was diagnosed on January 23, 2001 and developed squamous cell carcinoma in situ on the right hand and was diagnosed on November 26, 2012

8.   George Bergman suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF THREE – BERNARDO**

9.   The Plaintiff, Ismenia Bernardo, currently resides at 18 Central Avenue Seekonk, MA 02771.

10.  Ismenia Bernardo was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1975 to 2002 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

11.   As a direct and proximate result of the Defendant's conduct, Ismenia Bernardo, developed breast cancer and was diagnosed on April 27, 2004.

12.   Ismenia Bernardo suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF FOUR – BOZEK**

13.   The Plaintiff, Linda Bozek, currently resides at 151 Leawood Lane, Attleboro, MA 02703.

14.   Linda Bozek was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1952 to 2002 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

15.   As a direct and proximate result of the Defendant's conduct, Linda Bozek, developed an enlarged lymph node with follicular lymphoma and was diagnosed as grade 1 of 3 in August 2009 and low grade follicular lymphoma, Stage III diagnosed as lymphoma in December 2012.

16.   Linda Bozek suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF FIVE – CAMPBELL**

17.   The Plaintiff, Mary Campbell, currently resides 222 Mendon Road Attleboro, MA 02703.

18. Mary Campbell  was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from December 1955 to April 1971 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

19. As a direct and proximate result of the Defendant's conduct, Mary Campbell, developed squamous cell carcinoma in situ of the cervix and was diagnosed on October 21, 1975.

20. Mary Campbell suffered these injuries as a direct and proximate result of the Defendant's conduct.


**PLAINTIFF SIX – COTTER**

21. The Plaintiff, John Cotter, currently resides at 691 Hartland Road Tolland, MA 01034.

22. John Cotter  was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from July 1981 to January 1992 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

23.   As a direct and proximate result of the Defendant's conduct, John Cotter, developed papillary carcinoma of the thyroid and was diagnosed on June 24, 2008.

24.   John Cotter suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF SEVEN - DRATWINSKI**

25.   The Plaintiff, Irma Dratwinski, currently resides at 61 Greenwich Street South Attleboro, MA 02703.

26.   Irma Dratwinki was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1967 to 1989 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

27.   As a direct and proximate result of the Defendant's conduct, Irma Dratwinski, developed breast cancer was diagnosed on November 2, 1999.

28.   Irma Dratwinki suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF EIGHT - GAGNON**

29. The Plaintiff, Peter Gagnon, currently resides at 22 Eleanor Drive Cumberland, RI 02864.

30. Peter Gagnon  was employed by Texas Instruments, Inc. ("TI") and/or M
    & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc.
    (collectively "M&C"), from February 1977 to January 2002 and, as a
    direct and proximate result of the Defendant's conduct, was exposed to
    enriched uranium and other radioactive materials while employed by the
    Defendant.

31. As a direct and proximate result of the Defendant's conduct, Peter
    Gagnon, developed appendix cancer and was diagnosed on January 23,
    2008. Peter Gagnon also developed prostate cancer and was diagnosed
    on August 20, 2012.

32. Peter Gagnon suffered these injuries as a direct and proximate result of
    the Defendant's conduct.


**PLAINTIFF NINE – GRENIER**

33. The Plaintiff, Joseph Grenier, currently resides at 30 Olney Street Apt 410
    Taunton, MA 02780.

34. Joseph Grenier was employed Texas Instruments, Inc. ("TI") and/or M &
    C Nuclear, Inc., the wholly owned subsidiary of Metals and Controls, Inc.
    (collectively "M&C"), from 1953 to 1985 and, as a direct and proximate
    result of the Defendant's conduct, was exposed to enriched uranium and
    other radioactive materials while employed by the Defendant.

35. As a direct and proximate result of the Defendant's conduct, Joseph
    Grenier developed skin cancer, non-small cell carcinoma of the right lung

and cancer of the lip and was diagnosed on January 10, 2010 and was re-diagnosed with lung cancer in February 2014.

36.   Joseph Grenier suffered these injuries as a direct and proximate result of the Defendant's conduct.


**PLAINTIFF TEN – LATIMER**

37.   The Plaintiff, Charles Latimer Jr., currently resides at 956 Longview Drive North Attleboro, MA, 02760.

38.   Charles Latimer Jr. was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from September 1959 to January 199 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

39.   As a direct and proximate result of the Defendant's conduct, Charles Latimer Jr. developed rectal polyps, which were diagnosed as adenocarcinoma, colon cancer on July 29, 1992.

40.   Charles Latimer Jr. suffered these injuries as a direct and proximate result of the Defendant's conduct.


**PLAINTIFF ELEVEN – MARQUES**

41. The Plaintiff, Ely Marques, currently resides at 30 Olney Street Apartment 306 Taunton, MA 02780.

42. Ely Marques was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from November 1968 to September 1986 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

43. As a direct and proximate result of the Defendant's conduct, Ely Marques, developed a thyroid nodule on the right lobe and a mass on the right lung and was diagnosed July 14, 2009.

44. Ely Marques suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF ELEVEN - MENARD**

45. The Plaintiff, Barbara Menard, currently resides at 119 Grandview Avenue, Woonsocket, RI 02895.

46. Barbara Menard was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from December 1987- March 1970 and July 1970 – February 1972, and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

47. As a direct and proximate result of the Defendant's conduct, Barbara Menard developed basil cell carcinoma, skin cancer and was diagnosed in

1980 and develop invasive ductal carcinoma of the left and right breast and was diagnosed on October 13, 2011.

48. Barbara Menard's suffered these injuries as a direct and proximate result of the Defendant's conduct.

## PLAINTIFF TWELVE – MOURA

49. The Plaintiff, Maria Moura, currently resides at 46 Emma Ave Taunton, MA 02780.

50. Maria Moura was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1976 to 2001 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

51. As a direct and proximate result of the Defendant's conduct, Maria Moura, developed breast and thyroid cancer and was diagnosed in 1987.

52. Maria Moura suffered these injuries as a direct and proximate result of the Defendant's conduct.

## PLAINTIFF THIRTEEN – PEDRO

53. The Plaintiff, Maria Pedro, currently resides at 195 Dunbar Street Taunton, MA 02780.

54. Maria Pedro was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc.

(collectively "M&C"), from April 1973 to December 2005 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

55. As a direct and proximate result of the Defendant's conduct, Maria Pedro, developed right breast cancer and was diagnosed in March 1996.

56. Maria Pedro suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF FOURTEEN - PHILLIPS**

57. The Plaintiff, Charmayne Phillips, currently resides at 72 Whipple Road Smithfield, RI 02917.

58. Charmayne Phillips was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from March 1963 to May 1965 and from October 1965 to February 1966 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

59. As a direct and proximate result of the Defendant's conduct, Charmayne Phillips developed melanoma on the right posterior shoulder; squamous cell carcinoma in the neck was diagnosed in 2003. Charmayne Phillips developed infiltrating duct carcinoma nuclear grade 2, intra ductal carcinoma cribriform type, and nuclear grade 2 with focal central

necrosis and cancer of the right breast and was diagnosed on November 17, 2005.

60.   Charmayne Phillips suffered these injuries as a direct and proximate result of the Defendant's conduct.


**PLAINTIFF FIFTEEN– RICKETS**

61. The Plaintiff, Lillian Rickets, currently resides at 30 Olney Street, Apt. 409, Taunton, MA 02780.

62. Lillian Rickets was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1968 to 1994, and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

63. As a direct and proximate result of the Defendant's conduct, Lillian Rickets developed a brain tumor and was diagnosed in 1990; skin cancer (melanoma) was diagnosed in 1997 and 1998. Lillian Ricketts again developed abnormal skin cells (melanoma) and was diagnosed in 2002, 2006 and 2011.

64. Lillian Rickets suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF SIXTEEN – SICKINGER**

65. The Plaintiff, Ernest Sickinger, currently resides at 2384 Westfield Road Mount Airy, NC 27030.

66. Ernest Sickinger was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from January 1965 to May 1966 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

67. As a direct and proximate result of the Defendant's conduct, Ernest Sickinger, developed lung cancer and was diagnosed on June 22, 2001. Ernest Sickinger was also developed basal cell carcinoma, squamous cell carcinoma and malignant melanoma and was diagnosed in 1998, 2007, 2008, and 2013.

68. Ernest Sickinger suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF SEVENTEEN - SIMONIN**

69. The Plaintiff, George Simonin, currently resides at 11 Norma Street, Johnston, RI 02919.

70. George Simonin was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from December 1965 to October 1974 and, as a

direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

71. As a direct and proximate result of the Defendant's conduct, George Simonin developed leukemia and skin cancer and was diagnosed on October 9, 2001 and colon cancer was diagnosed in February 2012.

72. George Simonin suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF EIGHTEEN – SKINNER**

73. The Plaintiff, Donald Skinner, currently resides at 245 Wildwood Road #223 Saint Augustine, FL 32026.

74. was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from October 1950 to March 1960 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

75. As a direct and proximate result of the Defendant's conduct, Donald Skinner, developed prostate cancer and was diagnosed on July 8, 1999.

76. Donald Skinner suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF NINETEEN – SMITH**

77. The Plaintiff, Irene Smith, currently resides at 2924 Pawtucket Avenue Apartment 1 Riverside, RI 02915.

78. Irene Smith was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1969 to 2000 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

79. As a direct and proximate result of the Defendant's conduct, Irene Smith, developed Basil Cell Carcinoma on the upper and lower back and upper right arm and was diagnosed on April 19, 2006.

80.  Irene Smith suffered these injuries as a direct and proximate result of the Defendant's conduct.


**PLAINTIFF TWENTY – PEDRO**

81. The Plaintiff, Maria Pedro, currently resides at 195 Dunbar Street Taunton, MA 02780.

82. Maria Pedro was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from April 1973 to December 2005 and, as a direct and proximate result of the Defendant's conduct, was exposed to

enriched uranium and other radioactive materials while employed by the Defendant.

83. As a direct and proximate result of the Defendant's conduct, Maria Pedro, developed right breast cancer and was diagnosed in March 1996.

84. Maria Perdro suffered these injuries as a direct and proximate result of the Defendant's conduct.


**PLAINTIFF TWENTY-ONE – TORNGREN, BRETT**

85. The Plaintiff, Brett Torngren, currently resides at 56 Sherman Avenue North Providence, RI 02911.

86. Brett Torngren was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from August 1984 to October 1987 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

87. As a direct and proximate result of the Defendant's conduct, Brett Torngren, developed testicular cancer and was diagnosed on December 1, 2012.

88. Brett Torngren suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF TWENTY-TWO – TORNGREN, FRANK**

89. The Plaintiff, Frank Torngren, currently resides at 39 Slater Street, Attleboro, MA 02703.

90. Frank Torngren, was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1967 to 1975 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

91. As a direct and proximate result of the Defendant's conduct, Frank Torngren developed Squamous Cell Carcinoma of the right vocal cord and was diagnosed on August 13, 2013. Frank Torngren also developed laryngeal lesions and carcinoma of the larynx and was diagnosed on February 27, 2014,

92. Frank Torngren suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF TWENTY-THREE – ZAREMBOVICZ**

93. The Plaintiff, Colleen Zarembovicz, currently resides at 73 Spring Street North Attleboro, MA 02703.

94. Colleen Zarembovicz was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from January 1974 to May 2007 and,

as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

95. As a direct and proximate result of the Defendant's conduct, Colleen Zarembovicz, developed ovarian cancer and was diagnosed on March 10, 1996.

96. Colleen Zarembovicz suffered these injuries as a direct and proximate result of the Defendant's conduct.

**PLAINTIFF TWENTY-FOUR - BALSER ESTATE**

97. The Plaintiff, the Estate of Charles W. Balser, by Ann Balser, its Personal Representative, who resides at 730 North Main Street Attleboro, MA 02703.

98. Charles Balser is survived by his wife, Ann Balser, who resides at 730 North Main Street, Attleboro, MA 02703. Charles Balser is also survived by two children a daughter, Gail Balser, of 182 North Main Street Attleboro, MA 02703; and a son, Steven Balser, of 39 Victoria Road Sudbury, MA 01776. Charles Balser is survived by four grandchildren, Shawna O'Brien of 182 North Main Street Attleboro, MA 02703; Nathan Balser of 39 Victoria Road Sudbury, MA 01776; Anna Balser of 39 Victoria Road Sudbury, MA 01776; and Madeline Balser of 39 Victoria Road Sudbury, MA 01776.

99. Charles Balser was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1949 to 1990 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

100.   As a direct and proximate result of the Defendant's conduct, Charles Balser developed anemia, lymphedema, hydronephrosis, hypopotassemia, gastroesophageal reflux, diffuse osseous metastases of from carcinoma of the prostate, secondary malignant neoplasm bone, malignant neoplasm prostate cancer and malignant neoplasm bone cancer and was diagnosed on October 29, 1991. Charles Balser also developed extensive mixed lytic and sclerotic metastases involving the pelvis and right femur, hematuria, elevation of the renal function text and transitional cell carcinoma of the posterior bladder wall on January 23, 1993.

101.   Charles Balser suffered these injuries as a direct and proximate result of the Defendant's conduct.

102.   As a direct and proximate result of the Defendant's conduct, Charles Balser died September 16, 1993, as a result of these injuries.


**PLAINTIFF TWENTY-FIVE - CHASE ESTATE**

103.   The Plaintiff, the Estate of Audrey Chase, by Marcia Miller, its Personal Representative, who resides at 10 Holden Street Attleboro, MA 02703.

104.    Audrey Chase is survived by her daughter, Marcia Miller, of 10 Holden Street, Attleboro, MA 02703.

105.    Audrey Chase was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from March 1951 to April 1953 and as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

106.    As a direct and proximate result of the Defendant's conduct, Audrey Chase developed stage IV transitional cell carcinoma of the bladder and was diagnosed in February 2000.

107.    Audrey Chase suffered these injuries as a direct and proximate result of the Defendant's conduct.

108.    As a direct and proximate result of the Defendant's conduct, Audrey Chase died February 24, 2002 as a result of these injuries.


**PLAINTIFF TWENTY-SIX – DIRENZO ESTATE**

109.    The Plaintiff, the Estate of Juliano DiRenzo by Samantha DiRenzo, its Personal Representative, who resides at 5 Cemetery Street Hopedale, MA 01747.

110.    Juliano DiRenzo is survived by his three grandchildren, Samantha DiRenzo of 5 Cemetery Street Hopedale, MA 01747; Dylan DiRenzo of

1192 Social Street Woonsocket, RI 02895; and Corey DiRenzo of 1192 Social Street Woonsocket, RI 02895.

111.    Juliano DiRenzo was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from September 1950 - January 1986 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

112.    As a direct and proximate result of the Defendant's conduct, Juliano DiRenzo developed gastric cancer, prostate cancer, coronary artery disease, congestive heart failure and abdominal aneurysms and was diagnosed in September 2003.

113.    Juliano DiRenzo suffered these injuries as a direct and proximate result of the Defendant's conduct.

114.    As a direct and proximate result of the Defendant's conduct, Juliano DiRenzo died October 1, 2004, as a result of these injuries.

**PLAINTIFF TWENTY-SEVEN – DIIORIO ESTATE**

115.    The Plaintiff, the Estate of Michael P. DiIorio by Sylvia Collins, its Executrix, who resides at 286 Lakeshore Drive West Warwick, RI 02889.

116.    Michael P. DiIorio is survived by his wife, Ms. Sylvia Collins, who resides at 286 Lakeshore Drive, West Warwick, RI 02889. Michael P.

DiIorio is also survived by his six children, Lisa DiIorio, Shannon DiIorio, Michael DiIorio, Jr., Christopher DiIorio, Kyle Jolly and Ethan Jolly.

117.    Michael P. DiIorio was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from October 1965 to November 1996 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

118.    As a direct and proximate result of the Defendant's conduct, Michael P. DiIorio developed acute lymphocytic leukemia and was diagnosed in 1989.

119.    Michael P DiIorio suffered these injuries as a direct and proximate result of the Defendant's conduct.

120.    As a direct and proximate result of the Defendant's conduct, Michael P. DiIorio died November 16, 1996, as a result of these injuries.


**PLAINTIFF TWENTY-EIGHT – ELLERY ESTATE**

121.    The Plaintiff, the Estate of Carl F. Ellery, by Joan Costello, its Personal Representative, who resides at 63 Old Field Road Plymouth, MA 02360.

122.    Carl Ellery is survived by his wife, Virginia Ellery of 63 Old Field Road, Plymouth, MA 02360. Carl Ellery is also survived by three children a daughter, Joan Costello of 63 Old Field Road Plymouth, MA 02360; a son,

John Ellery of 2489 LeClaire Road Concord, VT 05824; and a son, Thomas Ellery, of 133 Dodbrook Court, Roseville, CA 95747.

123. Carl Ellery was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from October 1963 to March 1965 and also from November 1973 to July 1986 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

124. As a direct and proximate result of the Defendant's conduct, Carl Ellery developed mild prostate enlargement, Grade II bladder trabeculation and splaying of the left upper calyces, metastasis to the right adrenal gland and left renal cell carcinoma and was diagnosed July 12, 1982.

125. Carl Ellery suffered these injuries as a direct and proximate result of the Defendant's conduct.

126. As a direct and proximate result of the Defendant's conduct, Carl Ellery died March 17, 2004, as a result of these injuries.

**PLAINTIFF TWENTY-NINE – FONSECA ESTATE**

127. The Plaintiff, the Estate of Maria Fonseca, by Ana Fonseca, its Personal Representative, who resides at 730 Pike Avenue Attleboro, MA 02703.

128. Maria Fonseca is survived by her daughter, Ana Fonseca, of 730 Pike Avenue Attleboro, MA 02703.

129.   Maria Fonseca was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from September 1969 to February 2002 and as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

130.   As a direct and proximate result of the Defendant's conduct, Maria Fonseca developed thyoma and was diagnosed in December 2002 and anaplastic astrocytoma brain in the left temporal lobe and was diagnosed in September 2010.

131.    Maria Fonseca suffered these injuries as a direct and proximate result of the Defendant's conduct.

132.   As a direct and proximate result of the Defendant's conduct, Maria Fonseca died November 6, 2011 as a result of these injuries.


**PLAINTIFF THIRTY - GABOURY ESTATE**

133.   The Plaintiff, the Estate of Richard H. Gaboury, by Beth- Anne Gaboury, its Personal Representative, who resides at 377 Robinson Avenue Attleboro, MA 02703.

134.   Carl Ellery is survived by his wife, Mary Gaboury, of 211 Pelican Road, Clearwater, FL 33764.  Richard Gaboury is also survived by three children a daughter, Beth- Anne Gaboury of 377 Robinson Avenue Attleboro, MA

02703; a son, Richard Gaboury, of PO Box 195 Hancock, VT 05748; and a daughter, Sherry Tinkham, 160 Grant Street Attleboro, MA 02703.

135.    Richard Gaboury was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1952 to 1960 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

136.    As a direct and proximate result of the Defendant's conduct, Richard Gaboury developed acute lymphocytic leukemia, encephalitis, pancreatitis, neutropenia, coronary artery disease, and gastro esophageal reflux disease and was diagnosed on September 20, 1991.

137.    Richard Gaboury suffered these injuries as a direct and proximate result of the Defendant's conduct.

138.    As a direct and proximate result of the Defendant's conduct, Richard Gaboury died December 28, 1992, as a result of these injuries.


**PLAINTIFF THIRTY-ONE  – GARNEAU ESTATE**

139.    The Plaintiff, the Estate of Eugene F. Garneau, by David Garneau, its Personal Representative, who resides at 1 Ducarl Drive Lincoln, RI 02865.

140.    Eugene Garneau is survived by his three children a son, David Garneau, of 1 Ducarl Drive Lincoln, RI 02865; a son, Kenneth Garneau,

170 Birch Street Attleboro, MA 02703 and a son, Eugene Garneau, of 163 Thatcher Street Attleboro, MA 02703.

141.   Eugene Garneau was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from September 1950 to January 1986 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

142.   As a direct and proximate result of the Defendant's conduct, Eugene Garneau developed renal failure and lung cancer and was diagnosed in August 2000.

143.   Eugene Garneau suffered these injuries as a direct and proximate result of the Defendant's conduct.

144.   As a direct and proximate result of the Defendant's conduct, Eugene Garneau died June 1, 2000, as a result of these injuries.


**PLAINTIFF THIRTY-TWO – GILMORE ESTATE**

145.   The Plaintiff, the Estate of Evans Gilmore, by Janice Luthy, its Personal Representative, who resides at 197 South Main Street Attleboro, MA 02703.

146.   Evans Gilmore is survived by his three children a daughter, Janice Luthy, of 197 South Main Street Attleboro, MA 02703.

147.    Evans Gilmore was employed by Texas Instruments, Inc. ("TI") and/or
M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls,
Inc. (collectively "M&C"), from 1950-1980 and, as a direct and proximate
result of the Defendant's conduct, was exposed to enriched uranium and
other radioactive materials while employed by the Defendant.

148.    As a direct and proximate result of the Defendant's conduct, Evans
Gilmore developed transitional cell carcinoma of the bladder and was
diagnosed in March 2001.   Evans Gilmore also developed liver cyst and
transitional cell carcinoma of the liver cancer and was diagnosed in
January 2007.

149.    Evans Gilmore suffered these injuries as a direct and proximate result
of the Defendant's conduct.

150.    As a direct and proximate result of the Defendant's conduct, Evans
Gilmore died March 17, 2007, as a result of these injuries.


**PLAINTIFF THIRTY-THREE – GORMAN ESTATE**

151.    The Plaintiff, the Estate of Lyford W. Gorman, by Julie Porter, its
Personal Representative, who resides at 56 Croyden Road, Framingham,
MA 01702.

152.    Lyford W. Gorman is survived by the following nine children Julie
Porter, of 56 Croyden Road, Framingham, MA 01702; Phillip Gorman, of
7328 47th Ave Circle, East Bradenton, FL 34203; William Gorman, of 3262
Scotland Street Port St., FL 32937; John Gorman of 350 Heald Road,

Proctorsville, VT 05153; Ellen Sheridan of 23 Carousel Drive Riverside, RI 02915; Timothy Gorman of 39 Armstrong Drive, A Randolph Ctr., VT 05061; Joan T Camara of 24 Ansel White Drive, Acushnet, MA 02743; Garret Gorman of 116 Kentucky Ave, Oakridge, TN 37830; and Elizabeth Gianferrante of 10 Charles Street, Sandwich, MA 02563.

153.   Lyford W. Gorman was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from June 1953 to July 1978 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

154.   As a direct and proximate result of the Defendant's conduct, Lyford W. Gorman developed numerous distal gastric ulcers, bronchopneumonia, emphysema and diffuse histolytic (large cell) lymphoma involving the spleen, para-aortic, inguinal, cervical and axillary nodes and was diagnosed in June 1983.

155.   Lyford W. Gorman suffered these injuries as a direct and proximate result of the Defendant's conduct.

156.   As a direct and proximate result of the Defendant's conduct, Lyford W. Gorman died August 21, 1983, as a result of these injuries.

**PLAINTIFF THIRTY-FOUR – GUIMOND ESTATE**

157.    The Plaintiff, the Estate of Theodore Guimond, by Penelope Rankl, its Personal Representative, who resides at 8 Apache Lane Cumberland, RI 02864.

158.    Theodore Guimond is survived by his daughter, Penelope Rankl, of 8 Apache Lane, Cumberland, RI 02864.

159.    Theodore Guimond was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from January 1952 to December 1967 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

160.    As a direct and proximate result of the Defendant's conduct, Theodore Guimond developed undifferentiated large cell carcinoma of lung and was diagnosed in December 1968.

161.    Theodore Guimond suffered these injuries as a direct and proximate result of the Defendant's conduct.

162.    As a direct and proximate result of the Defendant's conduct, Theodore Guimond died November 2, 1975, as a result of these injuries.

**PLAINTIFF THIRTY-FIVE – HOYLE ESTATE**

163.    The Plaintiff, the Estate of David Hoyle, by Rosemary Hoyle, its Personal Representative, who resides at 47 Pine Street Norton, MA 02766.

164.    David Hoyle is survived by his wife, Rosemary Hoyle of 47 Pine Street, Norton, MA 02766.

165.    David Hoyle was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from January 1952 to December 1967 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

166.    As a direct and proximate result of the Defendant's conduct, David Hoyle developed colon cancer and was diagnosed on March 1, 1998. David Hoyle also developed metastatic lesions on the liver, prostate and kidney and was diagnosed in October 1999.

167.    David Hoyle suffered these injuries as a direct and proximate result of the Defendant's conduct.

168.    As a direct and proximate result of the Defendant's conduct, David Hoyle died May 19, 2000, as a result of these injuries.


**PLAINTIFF THRITY-SIX – LEARY ESTATE**

169.    The Plaintiff, the Estate of Blanche Leary, by Jane Hannon, its Personal Representative, who resides at 320 Circuit Avenue, (PO BOX 3013), Pocasset, MA 02559.

170.    Blanche Leary is survived by her three children a daughter, Jane Hannon, of 320 Circuit Avenue, (PO Box 3013), Pocasset, MA 02559; a

daughter, Sandra Fothergill- Brown, of 9985 N. Pinal Ave Lot 135, Casa Grande, AZ 85122 and a son, Jeffery Leary, of 8 Bretton Woods Drive South Attleboro, MA 02703.

171.   Blanche Leary was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from June 1950 to April 1975 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

172.   As a direct and proximate result of the Defendant's conduct, Blanche Leary developed carcinoma of the left breast, metastases to the lungs, carcinoma of the left retroperitoneum, liver, carcinoma of the subcutaneous tissues, bones, peritoneum, and carcinoma of the left adrenal gland and ovaries and was diagnosed in September 1974.

173.   Blanche Leary suffered these injuries as a direct and proximate result of the Defendant's conduct.

174.   As a direct and proximate result of the Defendant's conduct, Blanche Leary died December 14, 1977, as a result of these injuries.


**PLAINTIFF THIRTY-SEVEN – MCCRETTON ESTATE**

175.   The Plaintiff, the Estate of Elizabeth A. McCretton, by Kathy McGowan, its Personal Representative, who resides at 2 Pratt Lane North Attleboro, MA 02760.

176.    Elizabeth McCretton is survived by her children, a daughter, Kathy McGowan of 2 Pratt Lane, North Attleboro, MA 02760

177.    Elizabeth McCretton was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from January 1952 to December 1967 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

178.    As a direct and proximate result of the Defendant's conduct, Elizabeth McCretton developed infiltrating ductal adenocarcinoma of the breast with a tubular component and was diagnosed on December 17, 1990 and was diagnosed with lung cancer on March 29, 2002.

179.    Elizabeth McCretton suffered these injuries as a direct and proximate result of the Defendant's conduct.

180.    As a direct and proximate result of the Defendant's conduct, Elizabeth McCretton died March 29, 2002, as a result of these injuries.


**PLAINTIFF THIRTY-EIGHT – MOITOZA ESTATE**

181.    The Plaintiff, the Estate of Irene Moitoza, by Peter G. Moitoza, its Personal Representative, who resides at 47 Weir Street, Taunton, MA 02780.

182.    Irene Moitoza is survived by her spouse, Robert A Moitoza, of 30 Gerbert Street, Taunton, MA 02780. Irene Moitoza is also survived by her

three children, Peter G. Moitoza of 47 West Weir Street, Taunton, MA 02780; a son, Paul G. Moitoza, of 59 West Weir Street, Taunton, MA 02780; and son, Robert A Moitoza Jr., 15 Moit's Place, Plymouth, NH 03264.

183.   Irene Moitoza was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from January 1951 to December 1960 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

184.   As a direct and proximate result of the Defendant's conduct, Irene Moitoza developed carcinoma of the colon and was liver metastases and was diagnosed in March 1979.

185.   Irene Moitoza suffered these injuries as a direct and proximate result of the Defendant's conduct.

186.   As a direct and proximate result of the Defendant's conduct, Irene Moitoza died March 12, 1979, as a result of these injuries.

**PLAINTIFF THIRTY-NINE – RESENDES ESTATE**

187.   The Plaintiff, the Estate of Antonio Resendes, by Laurinda Resendes, its Personal Representative, who resides at 58 Robert Street Taunton, MA 02780.

188.    Antonio Resendes is survived by his three children a daughter, Laurinda Resendes, of 58 Robert Street Taunton, MA 02780, a son, Ryan Resendes of 58 Robert Street Taunton, MA 02780 and a son, Marc Resendes of 58 Robert Street Taunton, MA 02780.

189.    Antonio Resendes was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from July 1973 to May 2007 and as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

190.    As a direct and proximate result of the Defendant's conduct, Antonio Resendes developed poorly differentiated carcinoma and abdominal carcinoma and was diagnosed on September 4, 2008. Maria Fonseca suffered these injuries as a direct and proximate result of the Defendant's conduct.

191.    As a direct and proximate result of the Defendant's conduct, Antonio Resendes died  January 1, 2010 as a result of these injuries.


**PLAINTIFF FORTY – SCHULZE ESTATE**

192.    The Plaintiff, the Estate of Edward Lewis Schulze, by Isabel M. Schulze, its Personal Representative, who resides at 5334 Everwood Run, Sarasota, FL 34235.

193.    Edward Schulze is survived by his wife, Isabel Schulze, who resides at 5334 Everwood Run, Sarasota, FL 34235.   Edward Schulze is also survived by four children a daughter, Susan Schulze Kozik, of 4003 W. Briarcliff Lane, Seattle WA 98199, a three sons, Martin Schulze, of 835 Los Pueblos, Los Alamos, NM 87544, Robert Schulze of 18795 Polvera Drive, San Diego CA  92128 and David Schulze, 691 Main Street, Apt. 1 Malden, MA 02148.  Edward Schulze is also survived by two granddaughters, Jaqueline Schulze and Elizabeth Schulze, both at 18795 Polvera Drive San Diego CA 92128.

194.    Edward Schulze was employed by Texas Instruments, Inc. ("TI") and Metals and Controls, Inc. (collectively "M&C"), from 1957 to 1990 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

195.    As a direct and proximate result of the Defendant's conduct, Edward Schulze developed terminal inoperable lung cancer and was diagnosed in January 1995.

196.    Edward Schulze suffered these injuries as a direct and proximate result of the Defendant's conduct.

197.    As a direct and proximate result of the Defendant's conduct, Edward Schulze died July

**PLAINTIFF FORTY-ONE – SHELDON ESTATE**

198.    The Plaintiff, the Estate of Rose Sheldon, by Judith Davis, its Personal Representative, who resides at 30 Mayflower Road Norton, MA 02766.

199.    Rose Sheldon is survived by her daughter, Judith Davis of 30 Mayflower Road, Norton, MA 02766; and her son, Robert V. Sheldon Jr. of 121 Deimage Road, Swansea, MA 02777. Rose Sheldon is also survived by granddaughter, Laurie M. Lacasse, of 27 Mayflower Road, Swansea, MA 02777; grandson, Joseph Sheldon, of 315 Central Avenue, Seekonk, MA 02771; a great-grandson, Sean Sheldon of 108 Dunnell Avenue, Pawtucket, RI 02860; great-grandson, Ryan Rapoza of 53 Carlson Street, Attleboro, MA 02703; great-grandson Michael James of 988 Read Street, Attleboro, MA 02703; and great-granddaughter, Amber James of 988 Read Street, Attleboro, MA 02703.

200.    Rose Sheldon was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1957 to 1980 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

201.    As a direct and proximate result of the Defendant's conduct, Rose Sheldon developed carcinoma of the left breast with multiple osseous metastases, metastatic bone disease and acute renal failure and was diagnosed on March 10, 1995.

202.    Rose Sheldon suffered these injuries as a direct and proximate result of the Defendant's conduct.

203.    As a direct and proximate result of the Defendant's conduct, Rose Sheldon died March 16, 1995, as a result of these injuries.

**PLAINTIFF FORTY-TWO – SILVIA ESTATE**

204.    The Plaintiff, the Estate of Rose Silvia, by Patricia Robichaud, its Personal Representative, who resides 2 Matteson Lane Taunton, MA 02780.

205.    Rose Silvia is survived by her three children a daughter, Patricia Robichaud of 2 Matteson Lane Taunton, MA 02780 and daughter, Stacy Silvia of 2 Matteson Lane Taunton, MA 02780 and Shari Robichaud of 912 Lebanon Road Pendleton, SC 29670.

206.    Rose Silvia was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from August 1979 to September 1996 and as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

207.    As a direct and proximate result of the Defendant's conduct, Rose SIlvia developed well to moderately differentiated squamous carcinoma of the right tonsil and was diagnosed on April 18, 1994 and primary

carcinoma with metastatic disease to the bones and was diagnosed on June 19, 1996.

208.    Rose Silvia suffered these injuries as a direct and proximate result of the Defendant's conduct.

209.    As a direct and proximate result of the Defendant's conduct, Rose Silvia died September 4, 1996 as a result of these injuries.

**PLAINTIFF FORTY-THREE – SULLIVAN, LOURAINE ESTATE**

210.    The Plaintiff, the Estate of Louraine Sullivan, by Edward Sullivan, its Personal Representative, who resides at 157 Copperwood Road Stoughton, MA 02072.

211.    Louraine Sullivan is survived by her husband, Edward Sullivan, of 157 Copperwood Road Stoughton, MA 07

212.    Louraine Sullivan was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1974 to1982   and as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

213.    As a direct and proximate result of the Defendant's conduct, Louraine Sullivan developed stage IV lung cancer, a tumor in her joints and brain cancer and was diagnosed in 2006.

214.    Louraine Sullivan suffered these injuries as a direct and proximate result of the Defendant's conduct.

215.    As a direct and proximate result of the Defendant's conduct, Louraine Sullivan died February 13, 1956  as a result of these injuries.

**PLAINTIFF FORTY-FOUR – SULLIVAN, PIERRETTE ESTATE**

216.    The Plaintiff, the Estate of Pierrette M. Sullivan, by Diane Desilets, its Personal Representative, who resides at 30 Brook Street North Attleboro, MA 02760.

217.    Pierrette Sullivan is survived by two daughters, Diane Desilets of 30 Brook Street, North Attleboro, MA 02760; and Paula Sullivan of 11 Point View Place, Cocoa FL. 32926.

218.    Pierrette Sullivan was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from October 1954 to January 1960 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

219.    As a direct and proximate result of the Defendant's conduct, Pierrette Sullivan developed intraductal carcinoma of the breast and was diagnosed on January 14, 1982.

220.    Pierrette Sullivan suffered these injuries as a direct and proximate result of the Defendant's conduct.

221.    As a direct and proximate result of the Defendant's conduct, Pierrette Sullivan died October 20, 2014, as a result of these injuries.


**PLAINTIFF FORTY-FIVE – THORNHILL ESTATE**

222.    The Plaintiff, the Estate of Elmer Thornhill, by Linda Love, its Personal Representative, who resides at 192 Pearl Street, Seymour, CT 06483.

223.    Elmer Thornhill is survived by his daughter, Linda Love, 192 Pearl Street, Seymour, CT 06483.

224.    Elmer Thornhill was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from January 1952 to December 1967 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while there.

225.    As a direct and proximate result of the Defendant's conduct, Elmer Thornhill developed metastatic colon cancer, metastatic bone cancer and stage IV pancreatic adenocarcinoma and was diagnosed in 1993.

226.    Elmer Thornhill suffered these injuries as a direct and proximate result of the Defendant's conduct.

227.    As a direct and proximate result of the Defendant's conduct, Elmer Thornhill died May 26, 1994, as a result of these injuries.

**PLAINTIFF FORTY-SIX – TURGEON ESTATE**

228.    The Plaintiff, the Estate of Barbara M. Turgeon, by Michael Turgeon, its Personal Representative, who resides at 25 Clarendon Avenue Providence, RI 02906.

229.    Barbara Turgeon is survived by her husband, Aime Turgeon, of 100 Garfield Street, Attleboro, MA 02703. Barbara Turgeon is also survived by a son, Michael Turgeon, of 25 Clarendon Avenue, Providence, RI 02906

230.    Barbara Turgeon was employed by Texas Instruments, Inc. ("TI") and/or M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from 1956 to 1957 and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

231.    As a direct and proximate result of the Defendant's conduct, Barbara Turgeon developed invasive carcinoma of the right breast with ductal and lobular features and was diagnosed on March 29, 2001. Barabara Turgeon was also developed enchondroma, chondrosarcoma of the right femur and was diagnosed on April 18, 2002.

232.    Barbara Turgeon suffered these injuries as a direct and proximate result of the Defendant's conduct.

233.    As a direct and proximate result of the Defendant's conduct, Barbara Turgeon died February 23, 2014, as a result of these injuries.

**PLAINTIFF FORTY-SEVEN – VALLET ESTATE**

234.    The Plaintiff, the Estate of Anna M. Vallet, by Christina Cooper, its

Personal Representative, who resides at 78 School Street, Plainville, MA

02762.

235.    Anna Vallet has surviving spouse or children. Anna Vallet's is survived

by a niece, Christine Cooper, of 78 School Street, Plainville, MA 02762.

236.    Anna Vallet was employed by Texas Instruments, Inc. ("TI") and/or M

& C Nuclear, Inc., the wholly-owned subsidary of Metals and Controls, Inc.

(collectively "M&C"), from 1959 to 1975 and, as a direct and proximate

result of the Defendant's conduct, was exposed to enriched uranium and

other radioactive materials while employed by the Defendant.

237.    As a direct and proximate result of the Defendant's conduct, Anna

Vallet developed malignant lymphoma and was diagnosed in 1986.

238.    Anna Vallet suffered these injuries as a direct and proximate result of

the Defendant's conduct.

239.    As a direct and proximate result of the Defendant's conduct, Anna

Vallet died June 23, 1986, as a result of these injuries.

**PLAINTIFF FORTY EIGHT - NEVEU ESTATE**

240.    The Plaintiff, the Estate of Susan Neveu, by Kristina Behan, its

Personal Representative, who resides at 132 Woodbine Street

Providence, RI 02906.

241.    Susan Neveu is survived by her three children a daughter, Kristine

Behan of 132 Woodbine Street Providence, RI, a son, Timothy Dagosta of

2923 Christopher Avenue Baltimore, MD 21214 and a daughter, Terry Dagosta of 13 Broad Acre Farm Road Medway, MA 02053.

242.    Susan Neveu was employed by Texas Instruments, Inc. ("TI") and M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C"), from July 1964 to December 1970 and as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while employed by the Defendant.

243.    As a direct and proximate result of the Defendant's conduct, Susan Neveu developed stage III ovarian carcinoma, rectal lesions and poorly differentiated carcinoma of the colon and metastatic carcinoma of the lymph nodes and was diagnosed on June 2, 2012.

244.    Susan Neveu suffered these injuries as a direct and proximate result of the Defendant's conduct.

245.    As a direct and proximate result of the Defendant's conduct, Susan Neveu died February 9, 2014 as a result of these injuries.

**DEFENDANT**

246.    The **Defendant, Texas Instruments, Inc.** is a Delaware corporation with a principal place of business at 12500 TI Boulevard, Dallas, Texas.

247.    M & C Nuclear, Inc., the wholly-owned subsidiary of Metals and Controls, Inc. (collectively "M&C" or "merged entities"), are predecessors to Defendant, Texas Instruments, Inc.

248.   In 1959, M&C merged with Defendant, Texas Instruments Inc. (collectively "TI" or "Defendant").   For purposes of this complaint "Defendant", "TI" and "M&C" are used interchangeably to describe the actions of the Defendant.

249.   The Defendant, John Doe, is unknown entities that acted in concert with Defendant, Texas Instruments, Inc. to improperly dispose of radioactive materials and other hazardous substances.

**JURISDICTION AND VENUE**

250.   This Court has jurisdiction over the subject matter of this action over the Defendants pursuant to 28 U.S.C. Section 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and because the Defendant is a foreign corporation based outside of the Commonwealth of Massachusetts.

251.   Venue is proper in this judicial district pursuant to 28 U.S.C. Sections 1391(b), 1391(c) and 1395 because a substantial part of the events that give rise to these claims have occurred in this district and the threatened or actual releases of radiation and hazardous substances occurred in this district.

252.    All the parties named herein have sufficient minimum contacts with the Commonwealth of Massachusetts to render them subject to its jurisdiction.

## GENERAL FACTUAL ALLEGATIONS
## FOR ALL COUNTS

253.    Operations with radioactive materials began at the Forest Street facility in 1952 when M&C began fabricating enriched uranium foils at its manufacturing facility on Forest Street ("Forest Street facility") in Attleboro, Massachusetts.

254.    From 1952 through 1965, under a variety of government contracts, the Defendant fabricated enriched uranium fuel elements for the U.S. Naval Reactors Program, the U.S. Air Force, other U.S. Government-funded research, as well as commercial customers at its Forest Street facility.

255.    From 1965 through 1981, the Defendant fabricated fuel for the High Flux Isotope Reactor at Oak Ridge National Laboratory and other Government-owned research reactors. The Defendant also used depleted uranium and processed natural uranium at the Forest Street facility for research and development.

256.    The Defendant also supplied thorium foil strips for criticality experiments, source tests, and reactivity tests. The Defendant vacuum-melted and cast the Thorium into flat ingots. The Defendant's subsequently rolled the ingots to the desired thickness.

257.   M&C performed work under various contracts with the United States, including the Atomic Energy Commission ("AEC") and its contractors. Under these contracts, the Defendant manufactured, among other things, nuclear fuel core components at its manufacturing facility on Forest Street ("Forest Street facility") in Attleboro, Massachusetts.

258.   After M & C's merger with Texas Instruments, the Defendant continued working with radioactive materials at the Forest Street facility under various commercial contracts as well as contracts with the United States until approximately 1981.

259.   Work under these contracts involved the use of radioactive materials such as Uranium-234 (U-234), Uranium-235 (U-235), and Uranium-238 (U-238). Depleted uranium and U-235 in varying levels of enrichment and thorium were also used and generated by Defendant and its merged entities at the Forest Street facility.

260.   Defendant and its merged entities' operations at the Forest Street facility also involved the manufacturing of items such as thermostats and circuit breakers that contained radium-226 (R-226).

261.   Defendant and its merger entities employed the Plaintiffs and others from the Attleboro area in the 1950's, 1960's, 1970's and 1980's at the Forest Street facility.

262.   The Defendant's work related to radioactive materials was conducted in at least three buildings at the Forest Street facility.

263.  The Defendant initially conducted operations with radioactive materials in what were later designated Building 4 and Building 3.

264.  In 1956, the Defendant constructed Building 10 to house the manufacturing work involving radioactive materials.  In 1957, the Defendant consolidated the work involving radioactive materials to that location.

265.  The Defendant handled waste, processed scraps of metal and other residues, and treated waste acids and water both inside and outside Building 5 in areas known as the Metals Recovery Area and the Stockade.  The Defendant operated a waste evaporator and incinerator in Building 5.

266.   Scrap and waste generated by the Defendant's manufacturing processes were supposed to be returned to the U.S. Government; however, the Defendant negligently buried materials contaminated with levels of radioactivity onsite in a burial area adjacent to Building 11.

267.  Stemming from its nuclear fuel related operations at its Forest Street facility, Defendant and its merged entities, M&C, held U-234, U-235, and U-238 at the Forest Street facility.

268.  As a result of its commercial operations at its Forest Street facility, the Defendant and merged entities M&C, used R-226 in its manufacturing processes at the Forest Street facility.

269.  The young men and women, who are the Plaintiffs, agreed to take jobs at TI and M & C in the Forest Street facility and were just starting careers and families.

270.  None of the Plaintiffs were ever warned by M & C, or later the Defendant, TI, of the dangers of working with enriched uranium, thorium,

and other radioactive materials and as a result was negligent and breached its duty to the Plaintiffs.

271.    None of the Plaintiffs had any reason to believe that there was any danger in working with or around enriched uranium and other radioactive materials, as the Defendant or its merged entities never warned them of any danger and as a result was grossly negligent and breached its duty to the Plaintiffs.

272.    None of the Plaintiffs had any reason to believe there job was a potential threat to their health, as the Defendant or its merged entities never warned them of the health risks.

273.    Neither M & C, or later the Defendant, TI, undertook adequate steps to protect the Plaintiffs, as their employees, from the dangers of working around enriched uranium and other radioactive materials and as a result was grossly negligent and breached its duty to the Plaintiffs.

274.    Employing Radiation Health Safety methods and protocols that minimize radiation doses and the release of radioactive materials is not only a sound safety principle but also a regulatory requirement for radiation safety programs.

275.    The Defendant failed to employ Health Safety personnel adequately trained in radiation health physics to insure the safety of its employees and the Plaintiffs and as a result was grossly negligent and breached its duty to the Plaintiffs.

276.    The Defendant and its merged entities failed to establish and enforce an adequate radiation health physics protocol for their employees and the Plaintiffs in accordance with Atomic Energy Commission ("AEC"), Nuclear Regulatory Commission ("NRC"), or other applicable regulatory body regulations and as a result was grossly negligent and breached its duty to the Plaintiffs.

277.    Basic radiation health safety policies and applicable regulations required that radiation workers' exposure be monitored with appropriate dosimeter techniques and the use of bioassays to insure that the radiation dose exposure levels allowed for workers was limited.

278.    Neither the Defendant nor its merged entities regularly monitored the exposure of the Plaintiffs to radiation with dosimeters or bioassays and failed to effectively limit the Plaintiffs' radiation dose levels and as a result was grossly negligent and breached its duty to the Plaintiffs.

279.    Basic radiation health safety policies and applicable regulations required radiation workers to wear protective clothing and use shielding to decrease the exposure of radiation workers and to reduce radioactive contamination.

280.    Neither the Defendant nor its merged entities provided protective clothing and shielding apparatus to the Plaintiffs to effectively decrease their exposure to radiation and reduce radioactive contamination and as a result was grossly negligent and breached its duty to the Plaintiffs.

281.   Basic radiation health safety policies and applicable regulations required radiation workers to increase their distance to radioactive sources to decrease the exposure of radiation workers.

282.   Neither the Defendant nor its merged entities employed protocols that increased the distance of the Plaintiffs to radioactive sources and instead the Plaintiffs were free to come in direct contact with radioactive sources increasing their exposure to radiation and increasing radioactive contamination and as a result was grossly negligent and breached its duty to the Plaintiffs.

283.   The Defendant negligently allowed the Plaintiffs and other employees to enter areas where radioactive material was located without proper restrictions.  The Defendant negligently allowed office workers to enter the areas where radioactive material was located to do such tasks as gather paperwork and pick up time clock cards, all without proper protection or monitoring.

284.   Basic radiation health safety policies and applicable regulations required radiation workers to minimize the time of exposure to radioactive sources to reduce the exposure of radiation workers.

285.   Neither the Defendant nor its merged entities employed protocols that minimized the time of the Plaintiffs' exposure to radioactive sources to thereby reduce the Plaintiffs' exposure to radiation and as a result was grossly negligent and breached its duty to the Plaintiffs.

286.   The Defendant and its merged entities employed policies and protocols that were contrary to the health and safety of the Plaintiffs who were being exposed to radioactive material and in fact increased their radiation doses and as a result the Defendant was grossly negligent and breached its duty to the Plaintiffs.

287.   The Defendant and its merged entities employed policies that required the Plaintiffs to work overtime as well as six days a week thereby increasing the time of their exposure to radioactive material and in fact increased their radiation doses and as a result was grossly negligent and breached its duty to the Plaintiffs.

288.   The Defendant and its merged entities took more steps to protect the products they were manufacturing than the employees who manufactured the products and as a result the Defendant was grossly negligent and breached its duty to the Plaintiffs.

289.   Thin disposable rubber gloves that were provided to the Plaintiffs were for the purpose of protecting the Defendant's product from damage rather than the Plaintiffs. These gloves were disposed of with regular trash and never monitored for contamination and as a result the Defendant was grossly negligent and breached its duty to the Plaintiffs.

290.   The Defendant did not make inform the Plaintiffs of their exposure to enriched uranium and other radioactive materials at the time of their exposure or at any date reasonably soon thereafter and as a result was grossly negligent and breached its duty to the Plaintiffs.

291.   The Defendant did not make adequate attempts to reach out to the Plaintiffs to inform them of their exposure to enriched uranium and other radioactive materials and as a result was grossly negligent and breached its duty to the Plaintiffs.

292.   The Defendant after its merger with M & C continued to operate at the Forest Street manufacturing facility in Attleboro, Massachusetts that included uranium operations.  The Defendant continued to improperly dispose of radioactive material for those operations on the grounds of the Forest Street facility and elsewhere and as a result was grossly negligent and breached its duty to the Plaintiffs.

293.   In violation of nuclear material disposal regulations, the Defendant buried wastes from the manufacturing operations and improperly disposed of radioactive materials by burying them in an outdoor area next to Building 11 and at the Building 1 location. Radium 226 was found by radiological surveys in Building 1, the building closest to Forest Street and as a result was grossly negligent and breached its duty to the Plaintiffs.

294.   Plaintiffs located in all parts of the Forest Street facility were exposed to these unmonitored radioactive materials on a daily basis.

295.   As a result of extensive testing at the site, it was determined that there was extensive radioactive contamination at the Forest Street facility in addition to significant concentrations of PCB's volatile organic compounds and dangerous heavy metals.

296.    The Defendant began cleanup of uranium contamination in 1981 after nuclear operations ceased and the site's government license to manufacture nuclear materials lapsed.

297.    Decontamination of the Forest Street facility by the Defendant was not completed until at least 1997.

298.    Despite the Defendants clean up of the grounds of the Forest Street facility, the Plaintiffs, including but not limited to those who handled and fabricated nuclear fuels and switches, disposed of scrap and performed laboratory testing, still carried in their bodies the effects of their exposure to radioactive materials and other substances at the Forest Street facility.

299.    The Defendant dumped some of the waste from the Defendant's plant in the former Shpack landfill on the Norton-Attleboro line as well as various other sites throughout the City of Attleboro.

300.    The Defendant sold the Attleboro Forest Street facility and manufacturing complex in 2006 but has never made adequate attempts to contact workers or their surviving family members.


**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE/GROSS NEGLIGENCE**
**All Plaintiffs vs. Defendant**


301.    The preceding Paragraphs are realleged and incorporated herein by reference as though set forth here in their entirety.

302.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for Plaintiffs by preventing their exposure to radioactive materials and other toxic and hazardous substances while in its employ.

303.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for Plaintiffs by appropriately warning them of the risks and hazards of their exposure to radioactive materials and other toxic and hazardous substances while in its employ.

304.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for Plaintiffs by appropriately handling and storing the radioactive materials and other toxic and hazardous substances at the Forest Street facility.

305.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for Plaintiffs by appropriately monitoring their exposure to radioactive materials and other toxic and hazardous substances while in its employ.

306.    The Defendant is grossly negligent and liable for failing to prevent the Plaintiffs exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street facility.

307.    The Defendant is grossly negligent and liable for failing to warn the Plaintiffs of the risks and hazards of their exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street facility.

308.    The Defendant is grossly negligent and liable for its careless and improper handling and storing radioactive materials and other toxic and hazardous substances at the Forest Street facility.

309.    The Defendant is grossly negligent and liable for its careless and improper handling and storing radioactive materials and other toxic and hazardous substances at the Forest Street facility.

310.    The Defendant is grossly negligent and liable for its careless and improper monitoring of the Plaintiffs exposure to radioactive materials and other toxic and hazardous substances while in its employ.

311.    The Defendant is grossly negligent and liable for improperly disposing of radioactive materials and other toxic and hazardous substances, including but not limited to burying said substances on the grounds of the Forest Street facility and elsewhere in the City of Attleboro.

312.    The Defendant is grossly negligent and liable for failing to take reasonable and prompt action to contain and clean up the radioactive materials and other toxic and hazardous substances buried on the grounds of the Forest Street facility.

313.    Defendant knowingly continued to manufacture, handling and disposal of radioactive materials, and in an improper manner, and in willful, wanton and reckless disregard for the safety and health of the Plaintiffs.

314.    The Defendant's pattern of conduct occurred over a lengthy period of time, evidencing a pattern and practice of failure, recklessness and gross negligence.

315.    As a direct and proximate cause of the Defendant's foregoing acts and omissions, the Plaintiffs were not properly monitored and as a result unnecessarily and unknowingly exposed to radioactive materials and other toxic and hazardous substances, as a result of which the Plaintiffs developed devastating, debilitating and for some, fatal cancers.

**SECOND CLAIM FOR RELIEF**
**NEGLIGENCE PER SE**
**All Plaintiffs vs. Defendant**

316.    The preceding Paragraphs are realleged and incorporated herein by reference as though set forth here in their entirety.

317.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for Plaintiffs by following the rules and regulations of the Atomic Energy Commission, the Nuclear Regulatory Commission and other regulatory bodies with respect to radioactive materials and other toxic and hazardous substances located at the Forest Street facility.

318.    During the 1950's, 1960's, 1970's, and 1980's, the Office of Atomic Energy Commission, the Nuclear Regulatory Commission and other regulatory bodies found dissatisfaction with the criticality control, production control and health physics administration employed by the

Defendant and cited the Defendant for, including but not limited to, failing to comply with relevant radiation protection standards, nuclear reactor safety, public health and safety standards, and environmental protection.

319.    The Defendants failure to abide by the aforesaid rules and regulations is negligence per se.

320.    As a direct and proximate cause of the Defendant's foregoing acts and omissions, the Plaintiffs were not properly monitored and as a result exposed to radioactive materials and other toxic and hazardous substances, as a result of which the Plaintiffs developed devastating, debilitating and for some, fatal cancers.


**THIRD CLAIM FOR RELIEF**
**ULTRA-HAZARDOUS ACTIVITY- STRICT LIABILITY**
**All Plaintiffs vs. Defendant**

321.    The preceding Paragraphs are realleged and incorporated herein by reference as though set forth here in their entirety.

322.    The Defendant's manufacture, handling and disposal of radioactive materials and other toxic and hazardous substances, constituted an ultra-hazardous activity.

323.    As a result of the Defendant's engaging in the aforementioned ultra-hazardous activities, the Plaintiffs were exposed to radioactive materials and other toxic and hazardous substances during their employment with the Defendant.

324.    Defendant is strictly liable for any harm caused by the abnormally dangerous activity described above pursuant to the doctrine of strict liability set for in the Restatement of Torts, Section Edition.

325.    The manufacture, handling and disposal of radioactive materials and other toxic and hazardous substances, is an unreasonably dangerous activity because exposure to these substances more likely than not caused the development of radiogenic cancers in humans.

326.    As a direct and proximate result of the Defendant's highly dangerous activity, as set forth above, the Plaintiffs were not properly monitored and as a result exposed to radioactive materials and other toxic and hazardous substances.

327.    As a direct and proximate result of the Defendant's highly dangerous activity, as set forth above, the Plaintiffs have developed devastating, debilitating and for some, fatal cancers.


**FOURTH CLAIM FOR RELIEF**
**WILLFUL AND WANTON MISCONDUCT**
**All Plaintiffs vs. Defendant**

328.    The preceding Paragraphs are realleged and incorporated herein by reference as though set forth here in their entirety.

329.    At all times relevant, the Defendant knew that its employees were being exposed to radioactive materials and other toxic and hazardous substances.

330.   At all times relevant, the Defendant was aware of the associated dangers and risks to the Plaintiffs and its employees that the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances posed.

331.   Despite knowledge of the associated dangers and risks to the Plaintiffs and its employees from the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances, the Defendants continued to manufacture, handling and disposal of radioactive materials, and in an improper manner, and in willful, wanton and reckless disregard for the safety and health of the Plaintiffs and other employees.

332.   Despite knowledge of the associated dangers and risks to the Plaintiffs and its employees from the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances, Defendants failed to warn the Plaintiffs of the risks and hazards of their exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street facility.

333.   As a direct and proximate result of the willful, wanton and reckless acts and/or omissions of the Defendant, the Plaintiffs were not properly monitored and as a result exposed to radioactive materials and other toxic and hazardous substances.

334.   As a direct and proximate result of the willful, wanton and reckless acts and/or omissions of the Defendant, the Plaintiffs have developed devastating, debilitating and for some, fatal cancers.

335.   Punitive damages are warranted where, as here, the Defendants conduct was reckless and without due regard for the health, safety and well being of the Plaintiffs and its employees.

336.   Punitive damages are warranted where, as here, the Defendant's conduct is such that damages to punish and to deter in the future are indicated and appropriate.

**FIFTH CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**
**All Plaintiffs vs. Defendant**

337.   The preceding Paragraphs are realleged and incorporated herein by reference as though set forth here in their entirety.

338.   At all times relevant, the Defendant owed a fiduciary duty of care to the Plaintiffs as its employees to protect them from unreasonable dangers and risks, keep the safe from injury in the workplace, as well as inform them of any potential dangers in the workplace environment.

339.   At all times relevant, the Defendant possessed the knowledge and expertise to protect the Plaintiffs from the unreasonable dangers and risks associated with their unmonitored and unknowing exposure to radioactive materials and other toxic and hazardous substances.

340.    At all times relevant, the Defendant failed to employ properly trained radiation health safety officers, or employ the necessary procedures or protocols to protect the Plaintiffs from the associated dangers and risks associated with their unmonitored and unknowing exposure to radioactive materials and other toxic and hazardous substances.

341.    At all times relevant, the Defendant kept the Plaintiffs exposure to radioactive materials and other toxic and hazardous substances a secret from the Plaintiffs, thereby breaching its fiduciary duty to the Plaintiffs.

342.    At all times relevant, the Defendant failed to provide a safe workplace to the Plaintiffs, thereby breaching its fiduciary duty to the Plaintiffs.

343.    At all times relevant, the Defendant failed to comply with standards, rules and regulations issued by the Atomic Energy Commission, the Nuclear Regulatory Commission and other agencies, thereby breaching its fiduciary duty to the Plaintiffs.

344.    As a direct and proximate result of the Defendant's breach its fiduciary duty to the Plaintiffs, the Plaintiffs were not properly monitored and as a result exposed to radioactive materials and other toxic and hazardous substances.

345.    As a direct and proximate result of the Defendant's breach its fiduciary duty to the Plaintiffs, the Plaintiffs have developed devastating, debilitating and for some, fatal cancers.

**DAMAGES**
**FIRST THROUGH FIFTH CLAIM FOR RELIEF**
**All Plaintiffs vs. Defendants**

346.   As a result of their exposure to radioactive contaminants and other toxic and carcinogenic substances, and as a consequence of have contracted cancer, all Plaintiffs suffered devastating injuries and losses, including, but not limited to:

a.   Development of Cancer;

b.   Medical treatment and costs associated therewith;

c.   Future medical treatment and costs associated therewith;

d.   Diminished life expectancy;

e.   Lost opportunity for earlier diagnosis and treatment their injuries had the Plaintiffs had knowledge of their exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

f.   Lost opportunity for cure of their injuries had the Plaintiffs had knowledge of their exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

g.   Loss of availability of treatment modalities had the Plaintiffs had knowledge of their exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

h.   Past pain and suffering;

i.   Future pain and suffering;

j.   Past mental anguish;

k.   Future mental anguish;

l.   Past lost earnings;

m.  Future loss of earnings and earning capacity;

n.   Disfigurement;

o.   Humiliation;

p.   Embarrassment;

q.   Out of pocket costs;

r.   Loss of life's pleasures; and

s.   Loss of companionship

**DAMAGES**
**FIRST THROUGH FIFTH CLAIM FOR RELIEF**
**Plaintiffs Twenty-Four Through Forty-Eight vs. Defendants**

347.   All Plaintiffs that are the Estate of the Deceased employee of the Defendant are herein referred to as "Estate Plaintiffs" being Plaintiffs Twenty-Four through Forty-Eight.

348.   As a result of their exposure to radioactive contaminants and other toxic and carcinogenic substances, and as a consequence of having developed cancer, the Estate Plaintiffs Twenty-Four through Forty-Eight suffered devastating injuries and losses, including, but not limited to:

a.   Development of Cancer;

b.   Medical treatment and costs associated therewith;

c.   Diminished life expectancy and death;

d.   Lost opportunity for earlier diagnosis and treatment their injuries had the Plaintiffs had knowledge of their exposure to radioactive

contaminants and other toxic and carcinogenic substances and
dangers associated therewith;

e. Lost opportunity for cure of their injuries had the Plaintiffs had
knowledge of their exposure to radioactive contaminants and other
toxic and carcinogenic substances and dangers associated therewith;

f. Loss of availability of treatment modalities had the Plaintiffs had
knowledge of their exposure to radioactive contaminants and other
toxic and carcinogenic substances and dangers associated therewith;

g. Pain and suffering;

h. Mental anguish;

i. Lost earnings;

j. Disfigurement;

k. Humiliation;

l. Embarrassment;

m. Out of pocket costs;

n. Loss of life's pleasures; and

o. Loss of companionship

<div align="center">

**SIXTH CLAIM FOR RELIEF**
**WRONGFUL DEATH**
**Plaintiffs Twenty-Four Through Forty-Eight vs. Defendants**

</div>

349. The preceding Paragraphs are realleged and incorporated herein by
reference as though set forth here in their entirety.

350. That as a result of the negligent actions, as well as their willful and
wanton misconduct of the Defendant set forth herein, the Estate Plaintiffs

Twenty-Four through Forty-Eight suffered physical injuries set forth herein, other damages and death.

351.   That the conscious pain and suffering, physical injuries, other damages, and death suffered by the Estate Plaintiffs was proximately and directly caused by the negligent acts of Defendant when they exposed the Estate Plaintiffs to enriched uranium and other radioactive materials while employed by the Defendant.

352.   That as a direct and proximate result of the Defendant's negligent actions, as well as their willful and wanton misconduct, caused the wrongful death of the Estate Plaintiffs in violation of Massachusetts General Laws Ch. 229 § 2.

353.   That the Defendant's wrongful actions resulted in hospital, medical, funeral, and burial costs, and deprived the statutory wrongful death beneficiaries of the decedent's services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice.

354.   The wrongful acts of the Defendant, as stated herein, caused decedents of the Estate Plaintiffs to endure substantial conscious pain and suffering prior to their death, for which their Estates are entitled to be compensated.

355.   The Estate Plaintiffs are entitled to an award of punitive damages pursuant to Massachusetts General Laws Ch. § 2(3) because the deceased employees of the Estate Plaintiff's deaths were caused by the malicious, willful, wanton, or reckless conduct of the Defendant and/or by the gross

negligence of the Defendant. Despite knowledge of the associated dangers and risks to the Estate Plaintiffs and its employees from the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances, the Defendant knowingly continued to manufacture, handling and disposal of radioactive materials, and in an improper manner, and in willful, wanton and reckless disregard for the safety and health of the deceased employees of the Estate Plaintiffs.

356.    The Defendant's pattern of conduct occurred over a lengthy period of time, evidencing a pattern and practice of failure, recklessness and gross negligence.

**DAMAGES**
**SIXTH CLAIM FOR RELIEF**
**WRONGFUL DEATH**
**Plaintiffs Twenty-Four Through Forty-Eight vs. Defendants**

357.    The family members of the deceased Estate Plaintiffs Twenty-Four through Forty-Eight suffered damages for loss of companionship, lost financial support, funeral expenses and other expenses related to the care of the decedents of the Estate Plaintiffs and are also entitled to recover damages under the wrongful death statute for the Decedent's pain and suffering prior to their death.

**PRAYER FOR RELIEF**

**WHEREFORE, the Plaintiffs, pray this Court:**

1.  That the Plaintiffs each be awarded the sum of Ten Million Dollars ($10,000,000.00) as compensatory damages and Fifty Million Dollars ($50,000,000.00) as punitive damages, as well as attorneys fees and costs; and

2.  That the Plaintiffs be granted such other relief as the Court deems just and proper.

**DEMAND IS HEREBY MADE FOR A JURY TRIAL ON ALL ISSUES.**

<div style="margin-left:50%">

**Respectfully submitted,**

**The Defendants,**
**By their Attorneys,**
/s/Lynn Porreca
Lynn Porreca, Esquire
 BBO # 659893
Email: lynn@pilaw.me

/s/Fiore Porreca
Fiore Porreca, Esquire
 BBO #651019
Email: lp@pilaw.me

**Porreca Law Office**
184 North Main Street
Attleboro, MA  02703
(401) 830-9226
Facsimile: (401) 830-9201

</div>

Dated:  February 18, 2016