UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES W. CAUGER, *et al.*<br><br>    **Plaintiffs**<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.<br> and JOHN DOE<br><br>    **Defendants** | CIVIL ACTION NO.<br>1:16-cv-10358-DPW<br><br>LEAVE TO FILE GRANTED ON<br>AUGUST 18, 2016 [ECF No. 17] |

### DEFENDANT TEXAS INSTRUMENTS INCORPORATED'S
### REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Dated: August 29, 2016

Respectfully submitted,

TEXAS INSTRUMENTS INCORPORATED
By its attorneys,

Mark O. Denehy | BBO No. 120380
Katharine S. Perry | BBO No. 634167
Brian R. Birke | BBO No. 652720
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street
Boston, MA 02110
T: 617 482 0600

The Employee Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition") makes clear that the Complaint should be dismissed.[1]  Focusing on the Complaint and not the extraneous and mischaracterized materials and unpled allegations contained in the Opposition, it is apparent that the Act excludes the Employee Plaintiffs' claims.  In the Complaint, the Employee Plaintiffs' concede that their claims are for personal injuries incurred during their employment with TI, which are covered and solely compensable under the Act.  This is the only dispositive issue raised by the Complaint, and it compels dismissal of the Employee Plaintiffs' claims with prejudice.

The Employee Plaintiffs' other arguments, raised in an attempt to salvage their claims, also fail as a matter of law.  First, the Employee Plaintiffs improperly rely upon the so-called "dual-persona" theory to evade the exclusivity of the Act.  The Complaint itself, however, establishes that there is no dual persona of TI, let alone an entirely separate and unrelated duty owed to the Employee Plaintiffs, which is a predicate to applying the dual-persona theory.  Second, the Employee Plaintiffs' fraudulent concealment, false imprisonment, and equitable theories fail not only because they are absent from the Complaint, but also because the case law and pleadings make it clear that their remedy here is exclusively through the Act.  Finally, the Employee Plaintiffs' proposed loss of consortium claims are not before the Court and, therefore, should be disregarded.

---

[1] Abbreviations and defined terms used in this Reply Memorandum have the same meanings as set forth in TI's Memorandum of Law in Support of its Motion to Dismiss ("Supporting Memorandum").

For the reasons set forth in this Reply Memorandum and the reasons set forth in TI's Motion to Dismiss ("Motion") and Supporting Memorandum, TI respectfully requests that the Court grant TI's Motion and dismiss the Complaint with prejudice.[2]

**ARGUMENT**

**I. The Court's review of the Complaint and TI's Motion is under the Rule 12(b)(6) standard**

There is no dispute that Rule 12(b)(6) governs this Court's review of the Complaint and consideration of TI's Motion. Accordingly, whether the Employee Plaintiffs' claims survive TI's Motion turns on the factual allegations contained *in the Complaint*, which cannot merely be statements of legal conclusions couched as facts or otherwise threadbare or conclusory. *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011). Likewise, while the well-pleaded allegations in the Complaint are accepted as true at this stage, allegations "unembellished by any supporting facts" are insufficient to withstand TI's Motion. *A.G. ex rel Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80-81 (1st Cir. 2013). The Employee Plaintiffs acknowledge that this is the standard and that the Court's inquiry consists of analyzing TI's Motion against the *Complaint*. *See* Opposition, p. 3 ("Legal Standard").

The Rule 12(b)(6) standard in which only the Complaint is examined remains the appropriate inquiry even in the face of the unfounded allegations and mischaracterized materials presented in the Employee Plaintiffs' Opposition. The production of such extraneous information does not automatically take the Complaint and TI's Motion outside of the Rule 12(b)(6) rubric by converting TI's Motion to a Rule 56 motion for summary judgment.[3] *See*

---

[2] TI limits this Reply Memorandum to what it perceives to be the issues requiring rebuttal. As to all other issues, TI preserves its arguments on the grounds set forth in its Supporting Memorandum.

[3] Moreover, the Employee Plaintiffs do not request or seek leave to have TI's Motion converted to a Rule 56 motion for summary judgment.

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("[u]nder Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint"); *Johnson v. McDonald*, No. CA 12-10908-DPW, 2014 WL 1117931, *4 (D. Mass. Mar. 17, 2014) (holding that a court may refuse to consider new factual allegations in Rule 12(b)(6) briefing), *citing Steele v. Turner Broad. Sys., Inc.*, 607 F.Supp.2d 258, 263 (D. Mass. 2009) ("[A]ssertions in an opposition to a motion are not the equivalent of factual pleadings. To allow [a pro se plaintiff] to plead facts in such a manner would grant [him] too much leeway … at the expense of orderly procedure and would deprive the defendants of clear notice of the allegations against them."). Moreover, maintaining the current motion practice under Rule 12(b)(6), as opposed to Rule 56, is appropriate because this proceeding is at the pleading stage. *See McGee v. Benjamin*, No. CIV.A. 08-11818-DPW, 2012 WL 959377, *4 (D. Mass. Mar. 20, 2012) (finding conversion of motion to dismiss to motion for summary judgment inappropriate at pleading stage). The Court, therefore, should disregard or strike the supplementary allegations and materials contained in the Employee Plaintiffs' Opposition and determine the viability of their claims by analyzing only the Complaint under the Rule 12(b)(6) standard.

## II. The Complaint makes clear that the Act's exclusivity provision bars the Employee Plaintiffs' claims

The Employee Plaintiffs' Complaint sets forth claims based solely on alleged personal injuries arising out of their employment by TI, and that are solely compensable under the Act. The Employee Plaintiffs define Texas Instruments, Inc. (denoted as "TI" in the Complaint) and M&C Nuclear, Inc. and Metals and Controls, Inc. (collectively denoted as "M&C" in the Complaint) as the *Defendant* and their *employer* in this action. *See* Complaint ¶¶ 246-248; 269. The Employee Plaintiffs confirm the singular treatment of TI and M&C as their employer by

alleging that "'Defendant', 'TI' and 'M&C' are used interchangeably to describe the actions of the *Defendant*," *i.e.*, all alleged actions and injuries are attributable to TI and M&C as their employer. *Id.* at ¶ 248 (emphasis added). Therefore, according to the Complaint, all alleged actions and injuries are attributable to TI and M&C, collectively, as the Employee Plaintiffs' employer.

The Employee Plaintiffs' Complaint then lists the purported actions by which M&C and TI, from 1952 through 1982, used enriched uranium and other radioactive and toxic materials in their work, thereby causing the Employee Plaintiffs' injury. Specifically, the Complaint sets forth the following: (1) Defendant failed to warn the Employee Plaintiffs of the dangers of working with radioactive materials, *id.* at ¶¶ 270-272; (2) Defendant failed to hire safety personnel, establish adequate radiation health protocols for the Employee Plaintiffs, and generally protect the Employee Plaintiffs from exposure to radioactive materials, *id.* at ¶¶ 273, 275-276, 279-280, 285; (3) Defendant failed to regularly monitor and limit the Employee Plaintiffs' exposure to radiation, *id.* at ¶¶ 278, 282-283; (4) Defendant employed work-related policies that increased the Employee Plaintiffs' exposure to radioactive materials, *id.* at ¶¶ 282-283, 286-287; (5) Defendant failed to timely inform the Employee Plaintiffs of their exposure to radioactive materials, *id.* at ¶¶ 290-291; and (6) Defendant failed to properly dispose of its radioactive materials on the grounds of the Forest Street Facility, thereby exposing the Employee Plaintiffs to radioactive materials, *id.* at ¶¶ 292-294, 298. This is the sum and substance of the allegations of wrongdoing by "TI," as defined and used in the Complaint. Buttressing this conclusion, the Employee Plaintiffs base each and every one of their legal claims/theories solely on their allegation that their employment with "TI" caused their alleged injuries. *See id.* at ¶ 315 (Count I – Negligence/Gross Negligence), ¶ 320 (Count II – Negligence Per Se), ¶ 327 (Count

III – Ultra-Hazardous Activity – Strict Liability), ¶ 334 (Count IV – Willful and Wanton Misconduct), ¶ 345 (Count V – Breach of Fiduciary Duty), and ¶¶ 350, 357 (Count VI – Wrongful Death, M.G.L. c. 229, § 2).  Based on the Complaint, there are no claims or alleged injuries unrelated to the Employee Plaintiffs' employment with "TI."

Because the Employee Plaintiffs concede that their alleged injuries are personal injuries that arise *solely* out of and in the course of their employment with TI, their alleged injuries are covered, or compensable, under the Act.  *Estate of Moulton v. Poupolo*, 467 Mass. 478, 483-84 (2014), *citing* M.G.L. c. 152, § 26.  As a result of such coverage, the Act bars their (or their family, dependents, and estate) claims for relief outside of the Act for the same injuries, *i.e.*, a direct action against TI.[4]  *See id.*, *citing* M.G.L. c. 152, § 24.  Employer immunity was a specific intent of the Legislature in promulgating the Act and its very broad exclusivity provision.  *Id.* at 483.  The Act's purpose is to take "away from employees who should become subject to its provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the [A]ct."  *Saab*, 452 Mass. at 567, *citing* L.Y. Nason, C.W. Koziol, & R.A. Wall, WORKERS' COMPENSATION § 26.1 (3d ed.2003), *quoting King v. Viscoloid Co.*, 219 Mass. 420, 422 (1914).  Only by enforcing the Act's guaranteed compensation and total employer immunity is the important public policy of ensuring predictability for both employee and employer by balancing protection for workers with certainty for employers furthered.  *Id.* at 567.

Here, the Employee Plaintiffs are explicit in their Complaint in defining and treating TI *and* M&C as their employer and the cause of their work-related injuries.  Likewise, the Act is

---

[4] The import and reach of the Act's exclusivity provision is so broad that a work-related injury only need be covered (*i.e.*, capable of compensation, yet not actually compensable or paid) for the Act to bar a claim.  *Saab v. Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 570-71 (2008) (citations omitted).

explicit in its exclusive coverage of the Employee Plaintiffs' injuries. In accordance with the Act's language and its broad remedial purpose, therefore, the Court should hold that the Employee Plaintiffs' exclusive avenue for relief is under the Act, not this Court. As a result, the Employee Plaintiffs' claims must be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6).

### III. The Employee Plaintiffs' newly asserted dual-persona theory fails because the Complaint explicitly defines and treats TI and M&C collectively as the employer of the Employee Plaintiffs

In an attempt to avoid the Act's preclusive effect, for the first time in their Opposition the Employee Plaintiffs' argue that TI is somehow liable under the extremely limited and rarely used "dual-persona" theory. The Employee Plaintiffs' syllogistic, dual-persona argument reads as follows: TI predecessor entities, which may or may not have employed the Employee Plaintiffs, may or may not have owned the Forest Street Facility on which the Employee Plaintiffs worked and, therefore, those purported non-employer predecessor entities, as landowners, are subject to liability irrespective of the Act because of their alleged distinctly different landowner duty owed to the Employee Plaintiffs. Although none of these allegations are contained in the Complaint, the Employee Plaintiffs' dual-persona theory is inapplicable for a number of reasons.

Under the dual-persona theory, an "employer *may* become a third person, vulnerable to tort suit by an employee, if – and only if – it *possesses* a second persona so completely independent from and unrelated to its status as employer that by established standards the law recognizes that persona as a separate legal person." *Braga v. Genlyte Grp., Inc.*, 420 F.3d 35, 39 (1st Cir. 2005) (emphasis added), *quoting* 6 Arthur Larson & Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 113.01[1], at 113–2 (2005) ("LARSON"). Where such a "dual persona" exists, the dual-persona theory then *may* permit a tort suit "*only* if the 'nonemployer

persona' owed the injured employee duties 'totally separate from and unrelated to' duties arising out of the employment relationship." *Braga*, 420 F.3d at 40 (emphasis added), *quoting* LARSON § 113.01[4], at 113–10 (2005); *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 620-21 (1990).[5]

The Court here need only look so far as the Complaint to determine that the dual-persona theory fails as a matter of law. Properly casting the Employee Plaintiffs' allegations in the Complaint against the requirements of the dual-persona theory reveals that the theory is inapplicable. First, rather than alleging that TI and M&C possess a second, separate, or dual, persona as landowner so completely independent from and unrelated to its status as employer, *see Braga*, 420 F.3d at 39, the Complaint actually defines TI and M&C as a singular employer-entity for purposes of describing (and ascribing to TI) all the alleged wrongful acts. As noted above, the Complaint defines Texas Instruments, Inc., M&C Nuclear, Inc. and Metals and Controls, Inc., collectively as the singular "TI" *Defendant* and *employer* in this action. *See* Complaint ¶¶ 246-248; 269. This alone renders the dual-persona theory inapplicable, as no "dual persona" exists or has been alleged in the Complaint.

Further fatal to the dual-persona theory is the fact that the Complaint alleges only duties owed by TI as the Employee Plaintiffs' employer, as opposed to another duty separate and unrelated to one owed in the employment relationship. *See Braga*, 420 F.3d at 40; *Gurry*, 406 Mass. at 620-21. The Complaint avers breaches of duties by TI that arose only in the context of TI as the employer of the Employee Plaintiffs; for example, failure to warn employees, failure to

---

[5] While the Supreme Judicial Court "'alluded favorably to the [dual persona] theory' in *Gurry*, it importantly has 'never explicitly adopted' it, much less established its scope or set parameters for it[s application]." *Braga*, 420 F.3d at 42, *citing Barrett v. Rodgers*, 408 Mass. 614, 616 (1990). In *Gurry*, the First Circuit noted that "[i]t is important that the dual persona doctrine 'not be used for the purpose of simply evading the exclusivity provision of the [Act].'" *Id.* at 42-43, *citing Kimzey v. Interpace Corp.*, 10 Kan. App. 2d 165, 694 P.2d 907, 912 (1985); *Gurry*, 406 Mass. at 621 (evaluating how suit would affect "important aims" of workers' compensation and corporate successorship principles).

protect employees, failure to monitor employees, and failure to provide a safe workplace, *etc*. *See* Complaint ¶¶ 270-272, 273, 275-276, 278-280, 282-283, 285-287, 290-294, 298. Nowhere in the Complaint is there any allegation that TI owed the Employee Plaintiffs any duties other than those that arose from the employment relationship. Likewise, nowhere in the Complaint is there any allegation that the Employee Plaintiffs were owed any duties by any entity other than those owed by an employer.[6] As a result, based on the Complaint as pled, the dual-persona theory is inapplicable and cannot be used by the Employee Plaintiffs to avoid the exclusivity of the Act.

IV. **The Employee Plaintiffs' fraudulent concealment theory asserted for the first time in their Opposition is excluded under the Act**

Without citation to any applicable authority or reference to allegations in their Complaint, the Employee Plaintiffs argue for the first time in their Opposition that TI somehow fraudulently concealed their alleged harmful exposure to radioactive materials. Opposition, pp. 14-15. The Employee Plaintiffs then resort solely to hyperbole and *ipse dixit* to liken such alleged concealment to false imprisonment, which they assert is a tort not covered under the Act. *Id.* Aside from the fact that the Complaint does not contain a fraudulent concealment or false imprisonment claim, *Sarocco v. Gen. Elec. Co.*, 879 F. Supp. 156 (D. Mass. 1995), summarily disposes of the Employee Plaintiffs' argument by holding that alleged fraudulent concealment of cancer-causing harms are exclusively covered by the Act. While *Sarocco* was cited and discussed in detail in TI's Supporting Memorandum (pp. 11-12), it bears repeating for emphasis. In *Sarocco*, retired workers and families of deceased employees sued their employer, General Electric Co. ("GE"), on a theory that GE's alleged fraudulent concealment of their workplace

---

[6] In *Wade v. Hutchins*, No. 940039, 1995 WL 809542, *2 (Mass. Super. June 22, 1995), Judge Sosman held that the dual-persona theory did not limit the exclusivity of the Act to permit an injured employee of a trust to maintain an action against the trustees in their individual capacity as landowners because the trust's and landowners' duties were similar – to prevent onsite, work-related injuries. *Id.*, *citing Gurry*, 406 Mass. at 620-21.

8

exposure to toxic substances was akin to false imprisonment and, therefore, not covered by the Act. *Id.* at 158, 161. The court rejected the plaintiffs' attempt to avoid the Act's exclusivity provision and ruled that, irrespective of GE's alleged conduct and the plaintiffs' legal theories, however pleaded, it was "inescapable" that the plaintiffs' claim was based on their occupational cancer, which is "unquestionably a personal injury as defined by the Act." *Id.* at 161-63. Accordingly, the *Sarocco* court ruled that, notwithstanding the plaintiffs' theory of fraudulent concealment, the Act provided their sole and exclusive remedy. *Id.* at 163. The Employee Plaintiffs' argument, therefore, fails as well.[7]

## V. The Employee Plaintiffs' equitable argument fails based on the pleadings

The Employee Plaintiffs claim for the first time in their Opposition, without citation to any applicable authority or reference to allegations in their Complaint, that it would be inequitable to permit TI to avail itself of the Act's exclusivity. The Employee Plaintiffs erroneously argue that TI has taken the position that they incurred "no work-related injuries" that would be covered under the Act. This argument fails simply by reviewing TI's briefing on its Motion, which shows that, to the extent the Employee Plaintiffs' alleged injuries are related to TI, they necessarily are work-related and, therefore, covered exclusively by the Act.

## VI. The Employee Plaintiffs' proposed loss of consortium claims are not before the Court and should be disregarded

As an initial matter, the Court should strike or disregard the Employee Plaintiffs' argument regarding any proposed amendment to their Complaint to add a claim for loss of consortium. As set forth above in Section I, this proceeding is at the motion to dismiss stage

---

[7] Moreover, and for completeness, the Employee Plaintiffs have not alleged (and cannot allege) any elements of a claim of false imprisonment. A defendant is liable for false imprisonment if: (1) it acts intending to confine another within fixed boundaries; (2) the act directly or indirectly results in confinement; and (3) the plaintiff is conscious of the confinement. *O'Neil v. Daimlerchrysler Corp.*, 538 F. Supp. 2d 304, 321 (D. Mass. 2008), *citing Cremaldi-Vickery v. Otis Elevator, Inc.*, 57 Mass. App. Ct. 1105, *2 (2003).

and, therefore, only the allegations and claims contained in the Complaint are before the Court. Further, Plaintiffs in this action (former employees and their estates) are not entitled to bring independent claims for loss of consortium. *See Litif v. United States*, 682 F. Supp. 2d 60, 82 (D. Mass. 2010), *aff'd*, 670 F.3d 39 (1st Cir. 2012), and *aff'd sub nom., Davis v. United States*, 670 F.3d 48 (1st Cir. 2012). Any claim for loss of consortium, if any exists, would accrue to individuals (spouses and/or family members), and not to the Employee Plaintiffs. Those spouses and family members are not Plaintiffs in this action.

## CONCLUSION

For the foregoing reasons and those set forth in TI's Supporting Memorandum, TI respectfully requests that the Court grant TI's Motion and dismiss the Employee Plaintiffs' Complaint with prejudice.

Respectfully submitted,

TEXAS INSTRUMENTS INCORPORATED
By its attorneys,

Dated: August 29, 2016

/s/_Brian R. Birke_____
Mark O. Denehy | BBO No. 120380
 mdenehy@apslaw.com
Katharine S. Perry | BBO No. 634167
 kperry@apslaw.com
Brian R. Birke | BBO No. 652720
 bbirke@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street
Boston, MA 02110
T: 617 482 0600

**CERTIFICATE OF SERVICE**

I, Brian R. Birke, hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via First-Class U.S. Mail to those indicated as non-registered participants, on August 29, 2016.

Dated: August 29, 2016  /s/ Brian R. Birke
                                        Brian R. Birke