## UNITED STATES FEDERAL COURT
### FOR
### THE DISTRICT OF MASSACHUSETTS

**Civil Complaint No**.

**James W. Cauger,**

**PLAINTIFF**

**VS.**

**Texas Instruments Incorporated**

and

**John Doe,**

**DEFENDANTS**

─────────────────────────────────────────────

## SECOND AMENDED COMPLAINT
─────────────────────────────────────────────

NOW COMES the Plaintiff, James W. Cauger and alleges as follows:

### PLAINTIFF

### JAMES W CAUGER

1.   The Plaintiff, James W. Cauger, currently resides at 37 Frog Pond Close, Mashpee, MA 02649.

2.    James Cauger was employed by General Plate Company from January 1, 1957 to December 31, 1957 and Texas Instruments Inc. from January 1, 1958 to April 15, 1959 and as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials

while occupying the property to attend his job at the Forest Street manufacturing facility ("Forest Street Facility") in Attleboro, Massachusetts.

3.  As a direct and proximate result of the Defendant's conduct, James Cauger developed cancer of the pharynx, squamous cell carcinoma (SCC) of the tongue, left cheek, glossotonisillar sulcus, left retro molar trigon and left hard palate was diagnosed on or about June 28, 2013. James Cauger has also developed Peripheral Neuropathy in the legs and feet that were medically determined to not be the result of diabetes.

4.  James Cauger suffered these injuries as a direct and proximate result of the Defendant's conduct.

**DEFENDANT**

5.  The Defendant, Texas Instruments Incorporated, is a Delaware corporation with a principal place of business at 12500 TI Boulevard, Dallas, Texas 75243.

6.  Texas Instruments Incorporated, a Delaware corporation was organized December 23, 1938.

7.  Texas Instruments, Inc., was a Massachusetts corporation organized in January 1970.

8.  General Plate was a company located in Attleboro, Massachusetts as early as the late 1920's.   General Plate Company was acquired by Spencer Thermostat Company.

2

9.      Spencer Thermostat Company was located in Cambridge, Massachusetts as at least as early as the 1930's. Spencer Thermostat Company was acquired by Metals and Controls Corporation.

10.     Metals & Controls Corporation was a Massachusetts corporation organized on or before January 6, 1931.

11.     Metals and Controls Corporation was merged into Texas Instruments Incorporated on April 10, 1959.

12.     M & C Nuclear Inc. was a Massachusetts corporation organized on December 9, 1957.  A name change was made on December 30, 1960 to Metals & Controls Inc.  The corporate name was again changed to Texas Instruments Inc. on January 1, 1970.

13.     Texas Instruments Inc. merged into parent corporation Texas Instruments Incorporated on or about December 31, 1971, with Texas Instruments Inc. referencing its organization under the name of M & C Nuclear and a later name change to Metals and Controls Inc. on December 31, 1960 and then Texas Instruments Inc. on January 1, 1970.

14.     The Texas Instruments Inc. and Texas Instruments Incorporated Merger documents conflict with the Massachusetts Secretary of States records which indicate Metals and Controls Inc. was organized on June 25, 1959 and later involuntarily dissolved on December 31, 1990.

15. Texas Instruments Inc., Metals & Controls Corporation, Metals & Controls Inc., M & C Nuclear, Inc., Spencer Thermostat Company and General Plate are all predecessors of the Texas Instruments Incorporated.

16. Texas Instruments Incorporated received all assets and assumed all liabilities of the companies acquired and herein are referred to collectively as "Defendant".

17. Defendant John Doe ("Doe") is unknown entities that acted in concert with Defendant Texas Instruments Incorporated to improperly handle and dispose of radioactive materials and other hazardous substances.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action over the Defendants pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and because the Defendant is a foreign corporation based outside of the Commonwealth of Massachusetts.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1395, because a substantial part of the events that give rise to these claims have occurred in this district and the threatened or actual releases of radiation and hazardous substances occurred in this district.

20. All the parties named herein have sufficient minimum contacts with the Commonwealth of Massachusetts to render them subject to its jurisdiction.

**GENERAL FACTUAL ALLEGATIONS FOR ALL COUNTS**

21.  Metals and Controls Corporation acquired a large portion the Forest Street manufacturing facility (hereinafter referred to as the "Forest Street Facility"), consisting of over ten buildings on over two hundred and sixty acres in Attleboro, Massachusetts, on March 18, 1932.  Metals and Controls Corporation acquired additional portions of the Forest Street Facility on January 15, 1948, February 3, 1948, April 12, 1950 and June 30, 1950

22.  Metals & Controls Inc. acquired the Forest Street Facility on or about January 3, 1961 by deed recorded in the Taunton Registry of Deeds in Book 1376 at Page 300 from Texas Instruments Incorporated claiming title through Articles of Consolidation with Metals & Controls Corporation recorded in Book 1316 at Page 152.

23.  Texas Instruments Inc. claims to acquire the Forest Street Facility on January 1, 1970 as a result of its name change from Metals & Controls Inc. to Texas Instruments Inc.

24.  Texas Instruments Incorporated acquires the Forest Street Facility on December 31, 1971 through its merger with Texas Instruments Inc.

25.  Texas Instruments Incorporated re-acquires the Forest Street Facility on February 28, 1980 by deed recorded in the Taunton Registry of Deeds in Book 1995 at Page 170.

26.  Metals and Controls Corporation, Metals and Controls Inc., M & C Nuclear Inc., General Plate Company and Spencer Thermostat Company, Texas

Instruments Incorporated and Texas Instruments Inc. were all separate and distinct legal entities that at various times conducted their business operations out the Forest Street Facility.  Although these entities were eventually merged with or acquired by Texas Instruments Incorporated, prior to the time of each merger, the Defendant was the property owner and landlord of the Plaintiff's employer.  The Defendant as landowner and landlord failed to maintain the property and take reasonable steps to avoid injury to the Plaintiff.

27.    Metals and Controls Corporation, Metals & Controls Inc., Texas Instruments Inc. and Texas Instruments Incorporated were at various pertinent times hereto, the landowners of the Forest Street Facility and the landlord to the other corporate tenants of the Forest Street Facility during their respective terms of ownership.

28.    The Defendant was aware of the operations with radioactive materials that began at the Forest Street facility in 1952, when Metals & Controls Inc. began fabricating enriched uranium foils at its manufacturing facility on Forest Street in Attleboro, Massachusetts.  Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

29.    The Defendant was aware that from 1952 through 1965, under a variety of

government contracts, the Forest Street Facility was use to fabricate enriched uranium fuel elements for the U.S. Naval Reactors Program, the U.S. Air Force, other U.S. Government funded research, as well as commercial customers. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

30.    The Defendant was aware that from 1965 through 1981, fuel for the High Flux Isotope Reactor at Oak Ridge National Laboratory and other Government owned research reactors was also fabricated at the Forest Street facility. Depleted uranium and processed natural uranium was also present and used at the Forest Street Facility for research and development. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

31.    The Defendant was aware that Thorium foil strips were also present at the Forest Street facility for criticality experiments, source tests, and reactivity tests. The Thorium was vacuum-melted and cast into flat ingots and subsequently the ingots were rolled to the desired thickness at the Forest Street facility. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and

intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

32. The Defendant was aware of the various contracts with the United States, including the Atomic Energy Commission ("AEC") and its contractors were performed at the Forest Street Facility. Under these contracts, nuclear fuel core components were manufactured at the Forest Street facility in Attleboro, Massachusetts. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

33. The Defendant was aware that radioactive materials were present at the Forest Street Facility under various commercial contracts as well as contracts with the United States until approximately 1981. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

34. The Defendant was aware that work under these contracts involved the use of radioactive materials such as Uranium-234 (U-234), Uranium-235 (U-235), and Uranium-238 (U-238). Depleted uranium and U-235 in varying levels of enrichment and thorium were also used and generated by the Defendant and its merged entities at the Forest Street Facility. Despite its

8

knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

35. Defendant was aware of operations at the Forest Street Facility that also involved the manufacturing of items such as thermostats and circuit breakers that contained Radium-226 (R-226). Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

36. The Defendant was aware that the work related to radioactive materials was conducted in at least three buildings at the Forest Street Facility.

37. The Defendant was aware that operations took place which involved housing radioactive materials in the Forest Street Facility Building 4 and Building 3.

38. The Defendant, in 1956, constructed Building 10 to also house the manufacturing work involving radioactive materials. In 1957, the work involving radioactive materials was consolidated to that location.

39. The Defendant was aware that waste, processed scraps of metal and other residues, including those from the treatment with waste acids and water resulted in contamination of these areas both inside and outside the areas known as the Metals Recovery Area and the Stockade. The Defendant was aware that a waste evaporator and incinerator was operated in Building 5.

40. The Defendant was aware that scrap and waste was generated by the manufacturing processes that took place on the property and that these waste materials were supposed to be returned to the U.S. Government. The Defendant was aware that waste materials were negligently buried on the Forest Street Facility and thereby contaminated property in a burial area adjacent to Building 11 with levels of radioactivity. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

41. The Defendant was aware that one or more tenants at the Forest Street Facility held U-234, U-235, and U-238 at the Forest Street Facility. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

42. The Defendant was aware that one or more tenants of the Forest Street Facility used R-226 in its manufacturing processes at the Forest Street Facility. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

43.   The Plaintiff agreed to take his job in the Forest Street Facility to further his career and family.

44.   The Plaintiff was never informed by the landowners of the presence of any of these toxic and hazardous substances and in fact was deliberately and intentionally not informed of the presence of these substances at the Forest Street facility. The Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

45.   The Defendant never warned the Plaintiff of the dangers of being exposed to enriched uranium, thorium, and other radioactive materials on the Forest Street Facility.

46.   The Plaintiff was exposed to toxic and hazardous substances due to careless radiation health safety protection protocols and program.

47.   The Defendant was aware that one or more of the tenants were at times cited for its negligent practices as they were in violation of the Atomic Energy Commission and Nuclear Regulatory Commission regulations.

48.   The Defendant was negligent and breached its duty to keep the grounds of the Forest Street facility safe for the Plaintiff to occupy as an employee of its tenant.

49.   The Plaintiff had no reason to believe that there was any danger in going to and from and entering onto the Forest Street facility and had no knowledge

of the enriched uranium and other radioactive materials stored there. The Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

50.   The Plaintiff had no reason to believe that the property where his job was located, posed a potential threat to his health, as the Defendant never warned him of the health risks present on the property.

51.   The Defendant never took adequate steps to maintain the property in a safe condition and protect the Plaintiff from the dangers of being present around enriched uranium and other radioactive materials, and thus the Defendant was grossly negligent and breached its duty to the Plaintiffs.

52.   The Defendant, as landowner had a duty to ensure that all occupants employed radiation Health Safety methods and protocols that minimized radiation doses and the release of radioactive materials safeguarding the other tenants and occupants of the property.

53.   The Defendant failed to employ or require its tenant to employ Health Safety personnel adequately trained in radiation health physics to insure the safety of the Plaintiff, and thus it was grossly negligent and breached its duty to the Plaintiff.

54.   The Defendant failed to establish and enforce an adequate radiation health physics protocol in accordance with Atomic Energy Commission ("AEC"),

Nuclear Regulatory Commission ("NRC"), and other applicable regulatory body regulations, and thus the Defendant was grossly negligent and breached its duty to the Plaintiff as an occupant of the property.

55.    At the time of the Plaintiffs occupancy at the Forest Street Facility, basic radiation health safety policies and applicable regulations required that all those persons exposed to radiation be monitored with appropriate dosimeter techniques and use appropriate bioassays to ensure that the radiation dose exposure levels allowed for exposed individuals was limited.

56.    The Plaintiff was exposed daily to radioactive material and contamination and other toxic chemicals daily going and coming to the Forest Street Facility.  The Defendant did not regularly monitor the radiation exposure of occupants of the Forest Street Facility, its grounds, and thus the Plaintiff, all passersby, invited guests and other nearby landowners were exposed radioactive material and contamination and other toxic chemicals daily and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.

57.    The Defendant was aware that basic radiation health safety policies and applicable regulations required those individuals exposed to radioactive material to wear protective clothing and use shielding to decrease the exposure of radiation and to reduce radioactive contamination.

58.    The Defendant was aware that protective clothing and shielding apparatus was not provided to occupants of the Forest Street Facility, passersby, or

other invited guests in an effort reasonably and effectively decrease exposure to radiation and to reduce radioactive contamination.  The Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.  The Defendant failed to ensure such techniques were employed by all tenants to protect occupants of the Forest Street Facility, passersby, other invited guests or nearby landowners.

59.   The Defendant was aware that basic radiation health safety policies and applicable regulations required radiation workers to increase their distance to radioactive sources to decrease the exposure of radiation workers. The Defendant failed to ensure such techniques were employed by all tenants to protect occupants of the Forest Street Facility, passersby, other invited guests or nearby landowners.

60.   The Defendant failed to protect occupants of the Forest Street Facility, passersby, other invited guests or nearby landowners as it allowed the Plaintiff to come in direct contact with radioactive sources, increasing his exposure to radiation and increasing radioactive contamination, and thus they were grossly negligent and breached its duty to the Plaintiff.

61.   The Defendant was aware of the areas where radioactive material was located but failed to warn the Plaintiff or provide proper warnings or restrictions.

62.   Basic radiation health safety policies and applicable regulations required radiation workers to minimize the time of exposure to radioactive sources and to reduce the exposure of radiation workers.

63.   The Defendant never employed protocols that minimized the time of the Plaintiffs' exposure to radioactive sources to thereby reduce the Plaintiffs' exposure to radiation, and thus they were grossly negligent and breached its duty to the Plaintiff.

64.   The Defendant employed policies and protocols that were contrary to the health and safety of the Plaintiff who was being exposed to radioactive material, and, in fact increased his radiation doses, breaching its duty to maintain the property in a safe condition for the Plaintiff.

65.   The Defendant as landowner never made any attempts to stop the improper disposal of radioactive material on the grounds of the Forest Street Facility despite the property being occupancy by thousands of unknowing victims.

66.   The Defendant was aware that one or more of its tenants buried wastes from their manufacturing operations and improperly disposed of radioactive materials by burying them in an outdoor area next to Building 11 and at the Building 1 location. The Defendant failed to take any steps taken to remove the buried radioactive material. Because of the Defendant's failure to maintain the property in a safe condition, the Defendant was grossly negligent and breached its duty to the Plaintiff. The Plaintiff was exposed

daily to radioactive material and contamination and other toxic chemicals daily going and coming to the Forest Street Facility.

67.     The Defendant was aware that all parts of the Forest Street Facility were exposed to unmonitored radioactive materials. The roadways in the Forest Street Facility were used by the occupants to not only enter and exit the property for purposes of reporting to work, but were often used daily to pass from the Forest Street area to the Pleasant Street area. The Defendant failed to post warning signs or notify the Plaintiff as to the danger and exposure to radiation which resulted from his daily use of these roadways.

68.     The Defendant was aware that there was extensive radioactive contamination at the Forest Street Facility in addition to significant concentrations of PCB's volatile organic compounds and dangerous heavy metals. The Defendant failed to post warning signs or notify the Plaintiff as to the danger and exposure to radiation and significant concentrations of PCB's which resulted from his daily use of these roadways.

69.     Despite being aware of the extensive radioactive contamination at the Forest Street Facility in addition to significant concentrations of PCB's volatile organic compounds and dangerous heavy metals, the Defendant failed to take steps to begin until 1981 when the nuclear operations ceased, and the site's government license to manufacture nuclear materials lapsed. The Defendant continued to fail to post warning signs or notify the Plaintiff as to the danger and exposure to radiation and significant concentrations of PCB's which

resulted from his daily use of the grounds and the roadways despite its knowledge of the dangers to the Plaintiff.

70.   The decontamination of the Forest Street Facility by the Defendant was not completed until at least 1997.   The Defendant continued to fail to post warning signs or notify the Plaintiff as to the danger and exposure to radiation and significant concentrations of PCB's which resulted from his daily use of the grounds and the roadways despite its knowledge of the dangers to the Plaintiff.

71.   Despite the Defendant's clean-up of the grounds of the Forest Street Facility, the Plaintiff, including, but not limited to those who handled and fabricated nuclear fuels and switches, disposed of scrap and performed laboratory testing, and others who simply frequented the grounds of the Forest Street facility, long after carried in his body the effect of his exposure to radioactive materials and other substances at the Forest Street Facility, grounds and roadways.

72.   The Defendant did not inform the Plaintiff of his exposure to enriched uranium and other radioactive materials at the time of his exposure or at any date reasonably soon thereafter, thereby exacerbating the health consequences and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.

73.   The Defendant did not make adequate attempts to reach out to the Plaintiff to inform him of his exposure to enriched uranium and other radioactive

materials, thereby exacerbating the health consequences and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.

74. The Defendant sold the Forest Street Facility and manufacturing complex in 2004 but has never made adequate attempts to contact the Plaintiff or his family members to disclose the Plaintiffs exposure to radioactive materials or other substances.

75. The Shpack Landfill (hereinafter "Landfill") located in the City of Attleboro and the Town of Norton is comprised of approximately eight acres of land. The landfill received residential and commercial water until approximately 1966.

76. The Defendant dumped radioactive waste, cancer causing chemicals, and other toxic substances from the Defendant's Forest Street Facility at the Shpack landfill on the Norton-Attleboro line as well as at various other sites throughout the City of Attleboro.

77. The Landfill is set in a rural area and surrounded by ponds and wetland areas approximately one and a half miles from the Texas Instruments Forest Street Facility.

78. The Landfill was entirely open without fences or warning signs of the dangers present. There were no fences or warning signs of warning of the toxic waste at the site.

79. The Nuclear Regulatory Commission and Oak Ridge National Laboratories began an investigation after a nearby resident discovered radioactive material

in the landfill.  Extensive radioactive contamination, including but not limited to Uranium and Radon was found at the Shpack Landfill.  In 1981, the Department of Energy removed over nine hundred pounds of material contaminated with radioactive waste and other toxic chemicals with significant concentrations of PCBs, vinyl chloride, arsenic and other volatile compounds and heavy metals.

80.  In 1990, the Environmental Protections Agency reached an agreement with the Defendant would was deemed one of the responsible parties for the remediation of the site.

81.  The Plaintiff lived a short distance from both the Shpack Landfill and the Forest Street Facility.  The Plaintiff often walked in the Shpack Landfill and Forest Street Facility areas. The Plaintiff was further exposed to the radioactive waste dumped at the former Shpack Landfill on his visits to the landfill to dispose of unwanted personal property, while at the same time collecting other old furniture and household items previously discarded to bring home. Open fires were often burning at the landfill and produced a thick smoke in the area.

82.  In addition to the exposure to radioactive materials suffered by the Plaintiff in his work duties during which he carried uranium fuel rods with unprotected hands, the back of Plaintiff's residence was less than two thousand feet from the Forest Street Facility.  The Plaintiff traversed the Forest Street Facility grounds several times daily when going to and from

work at the Forest Street facility.   The Forest Street facility also served as a short cut from Forest Street to Pleasant Street by the Plaintiff and many area residents.   The Plaintiff was exposed to radioactive waste and other toxic chemicals with significant concentrations of PCBs, vinyl chloride, arsenic and other volatile compounds and heavy metals while going to and from work as well as when using the Forest Street facility as a short cut from Forest Street to Pleasant Street.

83.    The Defendant invited the Plaintiff and his family to family outings held at the Forest Street facility.  During these outings, the Defendant did not display warning signs of the radiation exposure to the attendees of these events held at the Forest Street Facility and its grounds, and thus the Plaintiff, and all invited guests were exposed radioactive material and contamination and other toxic chemicals and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.


I.          **FIRST CLAIM FOR RELIEF NEGLIGENCE/GROSS NEGLIGENCE**

84.    The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

85.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by preventing his exposure to radioactive

materials and other toxic and hazardous substances while occupying its property at the Forest Street Facility.

86.   At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by appropriately warning them of the risks and hazards of their exposure to radioactive materials and other toxic and hazardous substances while occupying its property.

87.   At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by appropriately handling and storing the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

88.   At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by appropriately monitoring his exposure to radioactive materials and other toxic and hazardous substances occupying its property.

89.   The Defendant is grossly negligent and liable for failing to prevent the Plaintiffs' exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

90.   The Defendant is grossly negligent and liable for failing to warn the Plaintiff of the risks and hazards of their exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

91.     The Defendant is grossly negligent and liable for its careless and improper handling and storing radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

92.     The Defendant is grossly negligent and liable for its careless and improper handling and storing radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

93.      The Defendant is grossly negligent and liable for its careless and improper monitoring of the Plaintiff's exposure to radioactive materials and other toxic and hazardous substances while occupying its property.

94.     The Defendant is grossly negligent and liable for improperly disposing of radioactive materials and other toxic and hazardous substances, including but not limited to, burying said substances on the grounds of the Forest Street Facility and elsewhere in the City of Attleboro.

95.     The Defendant is grossly negligent and liable for failing to take reasonable and prompt action to contain and clean up the radioactive materials and other toxic and hazardous substances buried on the grounds of the Forest Street Facility.

96.     Defendant knowingly continued to manufacture, handle and dispose of radioactive materials, in an improper manner, and in willful, wanton, and reckless disregard for the safety and health of the Plaintiff while occupying the Forest Street Facility, as well as while using the grounds and roadways for his personal use.

97.  The Defendant's pattern of conduct occurred over a lengthy period, evidencing a deliberate and intentional pattern and practice of failing to use reasonable care to protect all occupants of the Forest Street facility as well as passersby using the grounds, was with willful, wanton, and reckless disregard for the safety and health of the Plaintiff.

98.  As a direct and proximate cause of the Defendant's foregoing acts and omissions, the Plaintiff was unknowingly exposed to radioactive materials and other toxic and hazardous substances resulting in the Plaintiffs' development of devastating, debilitating and fatal cancers.

## II.    SECOND CLAIM FOR RELIEF NEGLIGENCE

99.  The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

100.  At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care when disposing of toxic materials, radioactive materials and other hazardous substances to prevent the residents in the Attleboro/Norton area from being exposed to these dangerous substances.

101.  At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care while disposing of materials at the Forest Street Facility and the Shpack Landfill, to post appropriate warning signs and segregate areas

by fence or otherwise to contain the hazardous waste and make it inaccessible by the public.

102. At all relevant times, it was the duty of the Defendant to warn nearby residents of the dangers and hazards posed by the radioactive and toxic chemicals disposed of at the Forest Street Facility and the Shpack Landfill.

103. The Defendant is liable for improperly transporting the radioactive and toxic chemicals to the Shpack Landfill in violation of Atomic Energy Commission regulations and Nuclear Regulatory Commission regulations.

104. The Defendant is liable for failing to warn the residents who frequented the landfill or lived nearby, for failing to provide the necessary safeguards and security at the Forest Street Facility and the Shpack Landfill.

105. As a direct and proximate result of the Defendant's negligent acts and omissions, the Plaintiff was exposed to hazardous substances, including radioactive material, vinyl Chloride, and dangerous heavy metals because of which he developed devastating and debilitating cancer.

### III.    THIRD CLAIM FOR RELIEF NEGLIGENCE PER

106. The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

107. At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by ensuring all its tenants followed the rules

and regulations of the AEC, the NRC, and other regulatory bodies with respect to radioactive materials and other toxic and hazardous substances being stored at its Forest Street Facility.

108.    During the 1950s, 1960s, 1970s, and 1980s, the Office of the AEC, the NRC, and other regulatory bodies found dissatisfaction with the criticality control, production control, and health physics administration employed by the Defendant and its tenants and cited the Defendant and its tenants for, including but not limited to, failing to comply with relevant radiation protection standards and nuclear reactor safety, public health and safety standards, and environmental protection.

109.    The Defendant's failure to abide by and ensure all tenants abide by the aforesaid rules and regulations is negligence per se.

110.     As a direct and proximate cause of the Defendant's foregoing acts and omissions, the Plaintiff was not properly informed or monitored, and thus, was exposed to radioactive materials and other toxic and hazardous substances, resulting in the Plaintiff's development of devastating and debilitating cancer.

### IV.        FOURTH CLAIM FOR RELIEF ULTRA-HAZARDOUS ACTIVITY-STRICT LIABILITY

111.    The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

112.   The Defendant act of allowing the manufacture, handling, and disposal of radioactive materials and other toxic and hazardous substances on its property located at the Forest Street facility constituted an ultra-hazardous activity.

113.   Because of the Defendant's act of allowing the manufacture, handling, and disposal of radioactive materials and other toxic and hazardous substances on its property located at the Forest Street facility, the Plaintiff was exposed to radioactive materials and other toxic and hazardous substances while occupying, passing by and otherwise frequenting the roadways and grounds located at the Forest Street Facility.

114.   Defendant is strictly liable for any harm caused by the abnormally dangerous activity described above pursuant to the doctrine of strict liability set forth in the *Restatement (Second) of Torts*.

115.   The manufacture, handling, and disposal of radioactive materials and other toxic and hazardous substances is an unreasonably dangerous activity, because exposure to these substances more likely than not caused the development of radiogenic cancers in humans.

116.   As a direct and proximate result of the Defendant's highly dangerous activity, as set forth above, the Plaintiff was not properly warned, monitored, or protected and thus, was exposed to radioactive materials and other toxic and hazardous substances.

117.    As a direct and proximate result of the Defendant's highly dangerous activity, as set forth above, the Plaintiff has developed devastating and debilitating cancer.

## V.        FIFTH CLAIM FOR RELIEF WILLFUL AND WANTON MISCONDUCT

118.    The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

119.    At all times, relevant, the Defendant knew that the occupants of the facility were being exposed to radioactive materials and other toxic and hazardous substances.

120.    At all times, relevant, the Defendant was aware of the associated dangers and risks to the Plaintiff and the occupants and was aware exposure to radioactive materials and other toxic and hazardous substances was inadequately monitored.

121.    Despite knowledge of the associated dangers and risks to the Plaintiff and the occupants of the Forest Street facility from the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances, the Defendants continued to allow tenants to manufacture, handle, and dispose of radioactive materials in an improper manner, and in willful, wanton, and reckless disregard for the safety and health of the Plaintiff and the occupants of the Forest Street facility.

122.   Despite knowledge of the associated dangers and risks to the Plaintiff and the occupants from the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances, Defendant failed to warn the Plaintiff of the risks and hazards of his exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

123.   As a direct and proximate result of the willful, wanton and reckless acts and/or omissions of the Defendant, the Plaintiff was not properly warned, monitored or protected and thus was exposed to radioactive materials and other toxic and hazardous substances.

124.   As a direct and proximate result of the willful, wanton, and reckless acts and/or omissions of the Defendant, the Plaintiff has developed devastating and debilitating cancers.

125.   Punitive damages are warranted where, as here, the Defendant's conduct was reckless and without due regard for the health, safety, and well-being of the Plaintiff and the Forest Street facility occupants.

126.   Punitive damages are warranted where, as here, the Defendant's conduct is such that damages to punish and to deter in the future are indicated and appropriate.

**VI.       SIXTH CLAIM FOR RELIEF BREACH OF FIDUCIARY DUTY**

127.   The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

128.   At all times, relevant, the Defendant owed a fiduciary duty of care to the Plaintiff as an invited guest of its tenants to protect him from unreasonable dangers and risks, keep him safe from injury on the Defendant's property, as well as inform him of any potential dangers while on the Defendant property.

129.   At all times, relevant, the Defendant possessed the knowledge and expertise to protect the Plaintiff from the unreasonable dangers and risks associated with their unmonitored and unknowing exposure to radioactive materials and other toxic and hazardous substances.

130.   At all times, relevant, the Defendant failed to maintain the property to a reasonable safety standard by ensuring all tenants employed properly trained radiation health safety officers or to employ the necessary procedures or protocols to protect the Plaintiff from the associated dangers and risks associated with his unmonitored and unknowing exposure to radioactive materials and other toxic and hazardous substances.

131.   At all times, relevant, the Defendant kept the Plaintiff's exposure to radioactive materials and other toxic and hazardous substances a secret from the Plaintiff, thereby exacerbating his injury and breaching its fiduciary duty to the Plaintiff.

132.   At all times, relevant, the Defendant failed to ensure its tenants complied with standards, rules, and regulations issued by the Atomic Energy

Commission (AEC), the Nuclear Regulatory Commission (NRC), and other agencies, thereby breaching its fiduciary duty to the Plaintiff.

133.   As a direct and proximate result of the Defendant's breach its fiduciary duty to the Plaintiff, the Plaintiff was not properly informed, monitored, or protected and thus, he was exposed to radioactive materials and other toxic and hazardous substances.

134.   As a direct and proximate result of the Defendant's breach of its fiduciary duty to the Plaintiff, the Plaintiff has developed devastating and debilitating cancers.

**VII.       SEVENTH CLAIM FOR RELIEF PREMISE LIABILITY**

135.   The preceding paragraphs are incorporated herein by reference as though set forth here in their entirety.

136.   Metals and Controls Corporation, Metals & Controls Inc., Texas Instruments Inc. and Texas Instruments Incorporated were at various pertinent times hereto, the landowners of the Forest Street Facility and the landlord to the other corporate tenants of the Forest Street Facility during their respective terms of ownership.

137.   Metals and Controls Corporation acquired a large portion the Forest Street manufacturing facility (hereinafter referred to as the "Forest Street Facility"), consisting of over ten buildings on over two hundred and sixty acres in Attleboro, Massachusetts, on March 18, 1932.   Metals and Controls

Corporation acquired additional portions of the Forest Street Facility on January 15, 1948, February 3, 1948, April 12, 1950 and June 30, 1950. From March 18, 1932 to April 10, 1959, Metals and Controls Corporation owned the Forest Street facility. During this time, it was the duty of Metals and Controls Corporation to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Metals and Controls Corporation had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Metals and Controls Corporation was aware. Metals and Controls Corporation was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals and Controls Corporation was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals and Controls Corporation was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

138.   Texas Instruments Incorporated claimed title of the Forest Street Facility through Articles of Consolidation with Metals & Controls Corporation on or

about April 10, 1959. From April 10, 1959 to January 3, 1961, Texas Instruments Incorporated owned the Forest Street facility. During this time, it was the duty of Texas Instruments Incorporated to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Texas Instruments Incorporated had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Texas Instruments Incorporated was aware. Texas Instruments Incorporated was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

139.   Metals & Controls Inc. acquired the Forest Street Facility on or about January 3, 1961 by deed recorded in the Taunton Registry of Deeds in Book 1376 at Page 300 from Texas Instruments Incorporated and owned the Forest Street

Facility until January 1, 1970.  From January 3, 1961 to January 1, 1970, Metals & Controls Inc. owned the Forest Street facility. During this time, it was the duty of Metals & Controls Inc. to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Metals & Controls Inc. had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Metals & Controls Inc. was aware. Metals & Controls Inc. was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals & Controls Inc. was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals & Controls Inc. was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

140.    Texas Instruments Inc. claims to acquire the Forest Street Facility on January 1, 1970 because of its name change from Metals & Controls Inc. to Texas Instruments Inc. and owned the Forest Street property until December 31, 1971. During this time, it was the duty of Texas Instruments Inc. to exercise

reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Texas Instruments Inc. had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Texas Instruments Inc. was aware. Texas Instruments Inc. was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Inc. was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Inc. was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

141.   Texas Instruments Incorporated acquired the Forest Street Facility on December 31, 1971 through its merger with Texas Instruments Inc. and owned the Forest Street property until December 29, 2004. During this time, it was the duty of Texas Instruments Incorporated to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Texas Instruments Incorporated had a duty to warn individuals lawfully on the premises of unreasonable dangers present

on the land of which Texas Instruments Incorporated was aware. Texas Instruments Incorporated was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing their continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

142.   As a direct and proximate result of the Defendant's negligence, the Plaintiff developed devastating, debilitating, and fatal cancers.

143.   When Defendant, Texas Instruments Incorporated, merged with Metals and Controls Corporation, Metals and Controls Inc., M & C Nuclear, Inc., General Plate Company, Spencer Thermostat Company and Texas Instruments, Inc., it assumed all their liabilities and obligations in accordance with Mass. Gen. Laws c. 156B, § 80.

## VIII.        EIGHTH CLAIM FOR INJURY RESULTING FROM INJURY NOT CONTEMPLATED UNDER WORKERS COMPENSATION ACT

144.    The preceding paragraphs are incorporated herein by reference as though set forth here in their entirety.

145.    The Defendant, despite clear knowledge of the Plaintiff's exposure to radiation, intentionally concealed that exposure and made no attempt to warn the Plaintiff. These acts by the Defendant were both intentional and unjustified.

146.    The Defendant did not inform the Plaintiff of his exposure to enriched uranium and other radioactive materials and toxic chemicals at the time of his exposure or at any date reasonably soon thereafter, thereby exacerbating the health consequences and thus the Plaintiff was restrained by the Defendant from obtaining lifesaving medical treatment.

147.    The Defendant did not make adequate attempts to reach out to the Plaintiff to inform him of his exposure to enriched uranium and other radioactive materials, thereby exacerbating the health consequences and thus the Plaintiff was restrained by the Defendant from obtaining lifesaving medical treatment.

148.    The Defendant sold the Forest Street Facility and manufacturing complex in 2006 but has never made adequate attempts to contact the Plaintiff or his family members to disclose the Plaintiffs exposure to radioactive materials or other substances.

149.    As a direct result of the Defendant's wanton and willful conduct of intentionally concealing the Plaintiff's exposure to radiation and its harmful and fatal effects, and the mounting number of former employees of the Defendant diagnosed with cancer, the Plaintiff was effectively retrained from seeking lifesaving medical treatment.  This type of injury by an employer is not one contemplated under the Workers Compensation Act and is an interference with the Plaintiff's freedom and right to appropriate medical care.

150.    As a direct result of this restraint, the Plaintiffs did not receive the necessary medical treatment in a timely manner that would have helped prevent, mitigate, or cure the myriad diseases and cancers to which the Plaintiff has been subjected.

## IX.                         DAMAGES

### All Claims for Relief

151.    As a result of his exposure to radioactive contaminants and other toxic and carcinogenic substances, his being prevented from seeking medical assistance, and as a consequence of have contracted cancer, the Plaintiff suffered devastating injuries and losses, including, but not limited to

a.      Development of cancer;

b.      Medical treatment and costs associated therewith;

c.      Future medical treatment and costs associated therewith;

d.  Diminished life expectancy;

e.  Lost opportunity for earlier diagnosis and treatment of his injuries had the Plaintiff had knowledge of their exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

f.  Lost opportunity for cure of their injuries had the Plaintiff had knowledge of his exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

g.  Loss of availability of treatment modalities had the Plaintiff had knowledge of his exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

h.  Past pain and suffering;

i.  Future pain and suffering;

j.  Past mental anguish;

k.  Future mental anguish;

l.  Past lost earnings;

m.  Future loss of earnings and earning capacity;

n.  Disfigurement;

o.  Humiliation;

p.  Embarrassment;

q.  Out-of-pocket costs;

r.  Loss of life's pleasures;

s.      Loss of companionship; and

t.      Loss of consortium.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays this Court

1.    Award Plaintiff the sum of Ten Million Dollars ($10,000,000) as

compensatory damages and Fifty Million Dollars ($50,000,000) as punitive

damages, as well as attorney's fees and costs; and

2.    That the Plaintiff be granted such other relief as the Court deems just and

proper.

**DEMAND IS HEREBY MADE FOR A JURY TRIAL ON ALL ISSUES.**

> Respectfully submitted,
> /s/ Fiore Porreca
> Fiore Porreca, Esquire
> BBO #651019
> Email: pilawpc@gmail.com
>
> PI Law PC
> 184 North Main Street
> Attleboro, MA 02703
> (401) 300-9189
> Facsimile: (401) 764-0138

Dated:  November 20, 2016

Certificate of Service

I, Fiore Porreca, hereby certify that this Complaint filed through the CM/ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be served via First-Class U.S. Mail to those indicated as non-registered participants  on November 21, 2016.
/s/ Fiore Porreca
Dated: November 21, 2016