```
                         UNITED STATES DISTRICT COURT
                          DISTRICT OF MASSACHUSETTS


 JAMES W. CAUGER, ET AL.,            ) Nos.
                                     ) 1:16-cv-10358-DPW
                 Plaintiffs,         ) 1:16-cv-12338-DPW
                                     ) 1:16-cv-12339-DPW
                                     ) 1:16-cv-12341-DPW
                                     ) 1:16-cv-12342-DPW
 vs.                                 ) 1:16-cv-12343-DPW
                                     ) 1:16-cv-12345-DPW
                                     ) 1:16-cv-12352-DPW
                                     ) 1:16-cv-12353-DPW
                                     ) 1:16-cv-12354-DPW
 TEXAS INSTRUMENTS, INC. AND         ) 1:16-cv-12355-DPW
 JOHN DOE,                           ) 1:16-cv-12356-DPW
                                     ) 1:16-cv-12357-DPW
                 Defendants.         ) 1:16-cv-12358-DPW
                                     ) 1:16-cv-12359-DPW
                                     ) 1:16-cv-12360-DPW
                                     ) 1:16-cv-12361-DPW
                                     ) 1:16-cv-12362-DPW
                                     ) 1:16-cv-12363-DPW
                                     ) 1:16-cv-12364-DPW
                                     ) 1:16-cv-12365-DPW
                                     ) 1:16-cv-12366-DPW
                                     ) 1:16-cv-12367-DPW
                                     ) 1:16-cv-12368-DPW
                                     ) 1:16-cv-12369-DPW
                                     ) 1:16-cv-12373-DPW
```

BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK

<u>CASE MANAGEMENT CONFERENCE</u>

John Joseph Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, MA 02210
Wednesday, May 9, 2018
3:13 p.m.

Brenda K. Hancock, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, MA 02210
(617)439-3214

1
2   APPEARANCES:

3       LAW OFFICE OF FIORE PORRECA
        By: Fiore Porreca, Esq.
4       184 North Main Street
        Attleboro, MA 02703
5       On behalf of the Plaintiffs.

6
        ADLER POLLOCK & SHEEHAN PC
7       By: Katherine S. Perry, Esq.
        One Citizens Plaza
8       8th Floor
        Providence, RI 02903
9       On behalf of the Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (The following proceedings were held in open court
2    before the Honorable Douglas P. Woodlock, United States
3    District Judge, United States District Court, District of
4    Massachusetts, at the John J. Moakley United States Courthouse,
5    One Courthouse Way, Courtroom 1, Boston, Massachusetts, on
6    Wednesday, May 9, 2018):
7    THE CLERK: In Re: Texas Instrument cases. If counsel
8    could please come forward and identify yourselves for the
9    record.
10   MR. PORRECA: Attorney Fiore Porreca for the
11   plaintiffs.
12   MS. PERRY: Good afternoon, your Honor. Katherine
13   Perry for Texas Instruments.
14   THE COURT: So, I have looked through the competing
15   Proposed Scheduling Orders and so on. I guess we have been
16   through Motion to Dismiss practice, so that is over. Now we
17   are moving into the merits of the case. I think I have
18   clarified what it is that survives Motion to Dismiss practice.
19   It is the non-work-related allegations here.
20   Having done that, I look at the time period the
21   parties are talking about. It is a long time to discover this
22   case, and I do not quite understand why that is.
23   MS. PERRY: Well, currently, your Honor, there are 26
24   active complaints with 26 different disease allegations and
25   very unique non-work-related exposure allegations potentially

1  in play in this case.
2      THE COURT:  Right.  So, the parties should be prepared
3  to litigate the case.  They could have been separately filed or
4  jointly filed.  I consolidated them to make sure that we got to
5  them, or that I did not burden my colleagues, I guess, is a
6  better way to say it.
7      MS. PERRY:  Well, I guess I would just like to address
8  your question of why, and I think one of the reasons why we had
9  the one small area where we disagreed in trying to come to our
10 scheduling order was an initial step after your order from
11 March 31st of cleaning up the current complaint.
12     THE COURT:  It does not have to be cleaned up.  You
13 file interrogatories.  If you want to know something, you file
14 interrogatories.  But this was the subject of extensive
15 briefing on these matters.  I decided that, after some
16 consideration of trying to draw the lines, it survives at this
17 stage on the non-work-related exposure claims.
18     My expectation is that there is going to be summary
19 judgment practice.  I would like to get to that as promptly as
20 possible, having in mind the parties' other schedules.  On the
21 other hand, if somebody takes on 26 cases, they had better be
22 able to prosecute them.  I would suspect that in promotional
23 materials to potential clients Adler Pollock doesn't say, "We
24 can't handle 26 cases."
25     MS. PERRY:  No, your Honor, not at all.

1  THE COURT: So, now we are talking about what do we do
2  to get the cases in a proper order? It strikes me that
3  interrogatories that are directed to each of them to give you
4  some information about their exposure and so on would move it
5  along. And then we are talking about a series of individual
6  depositions there that are, I will not say cookie-cutter, but
7  perhaps not the most demanding kind of deposition practice that
8  one encounters in one's legal career as a litigator, but
9  perhaps there is something that could be passed on to more
10 junior people to develop.
11 And then I guess there ought to be somebody out there
12 who says, because I think they are going to have to, for the
13 plaintiff an expert who can tie together exposure to something
14 that can be chargeable to the defendant. I do not want to have
15 a lot of time spent on Rule 11, but I assume that there is a
16 good-faith basis for making these claims. But if there is,
17 assuming there is, then it can be reached fairly quickly, I
18 would think.
19 Now, is it realistic to believe that this can be
20 disposed of on summary judgment practice in the best of all
21 circumstances from the defendant's point of view without the
22 experts? Defendant's point of view. Do you think you can move
23 for summary judgment successfully without experts? I don't
24 think you can.
25 MS. PERRY: I think, given the nature of the

1  non-work-related exposures that we may be dealing with as
2  *de minimis* or non-existent, it's possible, once we actually
3  take some depositions, that people don't have any exposures at
4  all that are non-work-related.  There may be a group within the
5  26, we have eight living plaintiffs, if I take eight
6  depositions and they don't have any non-work-related exposures,
7  yes, I can move for summary judgment without experts.  But for
8  any of the plaintiffs who have a witness who are able to
9  substantiate any type of above *de minimis* or background levels
10 of exposure, we would probably need plaintiffs' expert
11 disclosures at a minimum.
12         THE COURT:  Okay.  So, what I guess I would say,
13 because part of my responsibility, I think, is to minimize
14 cost, and I do not want to see cost imposed on a party to reach
15 an issue that could have been reached earlier -- it costs you
16 money to get an expert and pay an expert -- that we might have
17 two-tiered summary judgment practice, an initial summary
18 judgment practice based on essentially non-exposure or evidence
19 that there was not exposure outside of the work environment.  I
20 think, if that's the case, then that is probably a summary
21 judgment case, isn't it, for them?
22         MR. PORRECA:  I agree.
23         THE COURT:  Okay.  So, then the second ones are ones
24 in which there is a genuine issue of material fact as to
25 whether or not there was exposure outside of the workplace that

1  can generate a claim.
2          Then we go, I guess, to the expertise, and that is
3  where the rubber meets the road.  It may be that it has to be
4  dealt with in a Daubert setting.  I am not sure about that.
5  But what I think I would like to do is, let's get the basic
6  discovery, non-expert discovery done promptly, and that is
7  really, "What is your exposure?  Where do you think you had
8  exposure?", that kind of thing, and that does not take an awful
9  lot of time.
10         Now, we have medical authorizations September 28,
11 2018.  Are people taking long vacations?
12         MR. PORRECA:  I'm sorry, your Honor?
13         MS. PERRY:  That is a date that we should be able to
14 move up considerably.
15         THE COURT:  Oh, I would think so.  It was probably
16 yesterday that it should have been done, but I will say that
17 the medical authorization should be provided by the plaintiffs
18 no later than May 31.
19         MR. PORRECA:  By May 31?
20         THE COURT:  May 31.  I look at something like that and
21 I think -- I don't know what I think -- but I think it is too
22 slow, is what I ultimately think it is.
23         In terms of written discovery and deposition
24 discovery, we have got depositions going out until June 28th,
25 2019.  That is absurd.  So, I am going to cut that back and,

1  without making any suggestions about how you want to allocate
2  your time among written discovery and deposition discovery, I
3  want all the discovery, fact discovery, completed by
4  November 30, 2018.  You decide how you want to do it.  That
5  means that nobody is filing written interrogatories on
6  November 29th.  You have got to get it all done, all of the
7  discovery and depositions all done by November 30.
8        Then, at that point I will leave it to the defendant
9  to take a position with respect to summary judgment.  I think
10 that what I would like is to receive notice as soon as the
11 defendant decides whether or not they will be moving for
12 summary judgment simply on the basis of the fact discovery in
13 the case, and I will permit you to do so if you do it.  But do
14 not do it to educate me without any realistic possibility that
15 you are going to be successful, because I am uneducable, and
16 that will take too much time.
17       So, you have got November 30 to report whether or not
18 there will be a first phase of summary judgment process that
19 the defendant is going to pursue.
20       Then we turn to the question of expert reports, which
21 right now are almost lost in the future.  As far as I am
22 concerned, as to those expert reports for persons who are not
23 the subject of the summary judgment on the basis of fact
24 discovery, we are going to push that up quite a bit, too.  The
25 expert reports that the plaintiff is going to have to provide

1  under Rule 26 will be by March 30, 2019.  Let's be sure I have
2  got this right.  Yes, March 30, 2019, the defendant's expert
3  reports to be provided by April 30, 2019, and the depositions
4  to be completed by May 10th of 2019.
5          At that point I think the parties will be in a
6  position to tell me how they want to proceed on dispositive
7  motions or not.  It may be that it is going to be a Daubert
8  kind of question.  My general view about that is that I can
9  merge the two, that is, summary judgment and Daubert, the
10 summary judgment being essentially -- or at least one aspect of
11 it being a Daubert analysis of whether or not there is
12 admissible evidence that would support the position of the
13 plaintiff.  So, from my perspective, that means that the
14 remaining summary judgment motions should be filed by June 28,
15 2019.
16         So, that is the structure of it, a little bit more
17 aggressive than the structure that is provided by the schedule
18 that you have here.
19         Now, you have rebuttal expert reports, that sort of
20 thing that I'm not sure are necessary.  If you have got an
21 expert, the expert ought to be able to speak to the question.
22 If the expert wants to modify the expert report, they have to
23 modify it before their deposition is taken so that someone can
24 fully inquire, but this is the schedule for it.
25         MR. PORRECA:  If I may, your Honor, so what date would

1  defendants have to file their answer?  Will it be that
2  August 31st date?
3         THE COURT:  Well, faster than you provide your -- or
4  maybe on the same schedule that you provide your
5  authorization --
6         MR. PORRECA:  Okay.
7         THE COURT:  -- which is, as I have said, is really
8  only -- what is it?
9         MS. PERRY:  A little more than two weeks away.
10        THE COURT:  No reason why you cannot.  From my
11 perspective, it survives the standards for a products liability
12 kind of case or environmental case here.  It may be that the
13 plaintiff has no good grounds with respect to one or more of
14 these people, and if that is the case there is a Rule 11
15 problem that will arise, but I am not taking that up yet.  So,
16 the plaintiff will look very carefully, and you will inquire
17 very vigorously with respect to that, and we will get to it
18 promptly.
19        But this schedule is designed to provide for the
20 matter to be resolved on the merits, if cases do not get
21 dismissed by the plaintiff here after more careful
22 consideration of whether or not Rule 11 is being met.  But I
23 assume that there must have been someone that they talked to
24 who said, "Oh, yeah, there has been exposure here to a chemical
25 for which Texas Instruments is responsible."  If there is not,

1   that will be a problem.  But the orderly way of resolving it is
2   the schedule that I have provided here, I think.
3            Now, is there anything else that we need to discuss?
4            MS. PERRY:  No, your Honor.
5            MR. PORRECA:  No, your Honor.
6            THE COURT:  So, Ms. Beatty will send you a copy of the
7   schedule, but you have got it, and you will get those
8   authorizations promptly.
9            And you will get your answer promptly.  Okay?
10           MS. PERRY:  Thank you, your Honor.
11           THE COURT:  All right.  Thank you.  We will be in
12  recess.
13           MR. PORRECA:  Thank you.  Have a nice afternoon.
14  Thank you.
15           THE CLERK:  All rise.
16       (The Honorable Court exited the courtroom at 3:28 p.m.)
17         (WHEREUPON, the proceedings adjourned at 3:28 p.m.)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of *Cauger, et al v Texas Instruments, et al.*, Nos. 1:16-cv-10358-DPW, et al.

Date: 6/4/18     /s/ *Brenda K. Hancock*
Brenda K. Hancock, RMR, CRR
Official Court Reporter